THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HENRY KACZMAREK, Defendant-Appellant.

First District (3rd Division)    No. 1—97—2557

Opinion filed December 27, 2000.

Michael J. Pelletier and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Alan J. Spellberg, and Christine Cook, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

Following a jury trial in July 1989, defendant, Henry Kaczmarek, was convicted of murder, residential burglary, home invasion, and armed robbery and was sentenced to a term of natural life imprisonment on the murder conviction. Defendant appealed, and on March 31, 1993, this court reversed the murder conviction and remanded for a new trial.[1] *People v. Kaczmarek*, 243 Ill. App. 3d 1067, 1082, 613 N.E.2d 1253, 1264 (1993) (*Kaczmarek I*).

Prior to the start of his second trial in November 1996, defendant unsuccessfully moved to dismiss the State's charges on the grounds that his constitutional and statutory rights to a speedy trial had been violated. Following a retrial by jury, defendant was again found guilty of murder and, following a finding by the sentencing judge that the victim's murder was "exceptionally brutal or heinous," defendant received an enhanced term of natural life in prison under section 5—8—1(a)(1)(b) of the Unified Code of Corrections (Corrections Code) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(1)(b)).

Defendant appeals, arguing (1) the trial court erred in denying his motion for speedy-trial dismissal of the State's charges, and (2) he was denied a fair trial when the court (a) accepted a State witness as an expert in the area of chemical luminol testing and interpretation; (b) refused to accept a defense witness as an expert in the fields of luminol interpretation and blood splatter analysis; and (c) precluded the testimony of a defense witness concerning certain physical altercations defendant had been involved in with other individuals prior to the victim's murder. Defendant additionally challenges the validity of this life sentence, claiming the penalty enhancing scheme provided by section 5—8—1(a)(1)(b) of the Corrections Code is constitutionally infirm in light of the United States Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

For the following reasons, we reject, in an unpublished portion of this opinion, defendant's speedy-trial and trial error claims and affirm defendant's conviction for murder. However, because the penalty

_____

[1]Defendant also challenged his convictions for burglary, home invasion and armed robbery on the basis of insufficient evidence. Because no sentence was imposed on these verdicts, this court dismissed defendant's appeals for want of finality. *Kaczmarek I*, 243 Ill. App. 3d at 1082, 613 N.E.2d at 1264.

scheme set forth in section 5—8—1(a)(1)(b) of the Corrections Code offends the constitutional principles announced in *Apprendi,* we vacate defendant's life sentence and remand for resentencing.

The primary issue presented by defendant's appeal is whether the sentencing scheme set forth in section 5—1—8(a)(1)(b) of the Corrections Code, which allows for an enhanced sentence for first degree murder under certain court-determined circumstances, offends the constitutional mandates announced by the Supreme Court in *Apprendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

At sentencing in May 1997, the State urged the court to impose a life sentence based on its contention that the victim's murder was "exceptionally brutal" and "heinous" within the meaning of section 5—8—1(a)(1)(b) contained in the 1985 version of the Corrections Code. That version of section 5—8—1 generally enumerates the imprisonment terms for felony offenses and specifically sets forth a sentence of "not less than 20 years and not more than 40 years" in prison for the offense of first degree murder. Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(a).[2] Under paragraph (a)(1)(b) of this provision, a sentence of natural life is authorized where the sentencing judge finds that "the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(b).

The sentencing judge in the instant case agreed with the State's characterization of the crime and, specifically drawing upon his recollection of the evidentiary proofs adduced at trial, he found the conduct of defendant accompanying the murder of Ms. Nielsen to be brutal and heinous as contemplated by the Corrections Code. Based on its finding, the court sentenced defendant to life in prison.

---

[2]In its response brief, the State indicates that defendant is subject to a prison sentence of between 20 and 60 years. The murder of the victim in the instant matter occurred in April 1997. At that time, section 5—8—1 provided a sentencing range for first degree murder of 20 to 40 years. By amendment effective January 1, 1988, this sentencing range was increased to the current term of 60 years.

Contrary to the State's suggestion, the amended version of section 5—8—1 that became effective in January 1988, or the current version of that provision, cannot be retroactively applied to defendant's case because such an application would be violative of the *ex post facto* clauses of the United States and Illinois Constitutions (U.S. Const., art. I, § 9, cl. 3; Ill. Const. 1970, art. I, § 16). See *Fletcher v. Williams,* 179 Ill. 2d 225, 233, 688 N.E.2d 635, 640 (1997) (any statute that, *inter alia,* makes more burdensome the punishment for a crime after its commission is prohibited as *ex post facto*).

In *Apprendi*, the accused, Charles Apprendi, pled guilty to, among other offenses, two counts of second degree possession of a firearm for an unlawful purpose. Under New Jersey's sentencing scheme, a second degree offense carried a penalty range of 5 to 10 years in prison. As part of the plea agreement, the prosecution reserved the right, however, to seek a greater sentence on one of the two firearm possession counts under a hate crime statute that allowed for an enhanced sentence where the offense was committed with a biased purpose. For a second degree offense, the hate crime law provided for a prison term of between 10 and 20 years.

Following a hearing, the sentencing court found, by a preponderance of the evidence, that the firearm possession offense committed by Apprendi was motivated by a racial bias. Relying on the hate crime enhancement provision, the court sentenced Apprendi to a term of 12 years, two years beyond the statutory maximum penalty for such an offense.

Apprendi challenged the validity of his sentence to the state appellate and supreme courts, arguing that the sentencing scheme provided in the hate crime law was unconstitutional. The state courts disagreed and upheld Apprendi's sentence. The Supreme Court reversed, finding that New Jersey's sentencing scheme infringed upon the due process and notice and right to jury clauses of the Constitution by impermissibly allowing the sentencing judge, rather than the jury, to determine, under a relaxed evidentiary standard, a fact which is most appropriately characterized as an element of the underlying offense.

After discussing at length the constitutional rights of every defendant in a criminal case to a trial by jury in which the State is required to prove every element of the offense charged beyond a reasonable doubt (U.S. Const., amends. V, VI, XIV; *Apprendi*, 530 U.S. at 476-79, 147 L. Ed. 2d at 446-48, 120 S. Ct. at 2355-56), the Court examined the term "sentencing factor," a term it first coined in *McMillan v. Pennsylvania*, 477 U.S. 79, 91 L. Ed. 2d 67, 106 S. Ct. 2411 (1986), in light of the novelty of legislative schemes, referred to as "sentence enhancements," that remove from the jury the determination of a fact that, if found, exposes a defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected by the jury verdict alone. *Apprendi*, 530 U.S. at 479-85, 147 L. Ed. 2d at 448-52, 120 S. Ct. at 2356-60. According to the Court, a "sentencing factor" is "a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence within a range authorized by the jury's finding that the defendant is guilty of a particular offense." (Emphasis omitted.) 530 U.S. at 457 n.19, 147 L. Ed. 2d at 457 n.19, 120 S. Ct. at 2365 n.19. A "sentence enhance-

ment," on the other hand, refers to a factual determination that results in "an increase beyond the maximum authorized statutory sentence." *Apprendi*, 530 U.S. at 494 n.19, 147 L. Ed. 2d at 457 n.19, 120 S. Ct. at 2365 n.19.

The Court explicitly recognized that the effect of sentence enhancement legislation on a defendant's punishment raises serious constitutional concerns in light of its prior precedent in the area and the history upon which those decisions rely. *Apprendi*, 530 U.S. at 485-86, 147 L. Ed. 2d at 452, 120 S. Ct. at 2360. For the first time, the Court squarely confronted the issue of whether such enhancement schemes run afoul of well-established constitutional principles. Traditionally, according to the Court, any circumstance that exposed an accused to a higher degree of punishment had to be pled in the charging instrument and presented and proven to the jury beyond a reasonable doubt. *Apprendi*, 530 U.S. at 480, 147 L. Ed. 2d at 449, 120 S. Ct. at 2357. Further, the fact that judges have historically enjoyed the discretion of fixing a punishment within a prescribed statutory range (*Apprendi*, 530 U.S. at 481, 147 L. Ed. 2d at 449-50, 120 S. Ct. at 2358) demonstrated that their role in sentencing was "constrained at its outer limits by the facts alleged in the indictment and found by the jury. *** [F]acts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition 'elements' of a separate legal offense." *Apprendi*, 530 U.S. at 483 n.10, 147 L. Ed. 2d at 451 n.10, 120 S. Ct. at 2359 n.10. The Court explained:

> "If a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense [and suffered by the defendant] are heightened; it necessarily follows that the defendant should not—at the moment the State is put to proof of those circumstances—be deprived of protections that have, until that point, unquestionably attached." *Apprendi*, 530 U.S. at 484, 147 L. Ed. 2d at 451, 120 S. Ct. at 2359.

■ Relying on the principles established by its prior decisions, the Court concluded the Constitution forbids " 'a legislature [from] remov[ing] from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.' " *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2363, quoting *Jones v. United States*, 526 U.S. 227, 252, 143 L. Ed. 2d 311, 332, 119 S. Ct. 1215, 1228 (1999) (Stevens, J., concurring). According to the Court, the Constitution mandates that " 'such facts *** be established by proof beyond a reasonable doubt.' " *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2363, quoting *Jones*, 526 U.S. at 253, 143 L. Ed. 2d at 332, 119 S. Ct. at 1229 (Stevens, J., concurring). The

Court held that "any fact [other than the fact of a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[3] *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.[4]

In applying its ruling, the Court explained the relevant inquiry does not depend on the formal structure of the statute at issue, but of the statute's effect on the defendant's sentence—that is, "does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi*, 530 U.S. at 494, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365. If so, then the fact upon which the enhancement is based must be alleged in the charging instrument and proven before the jury beyond a reasonable doubt. In such cases, the enhancement factor is the "functional equivalent of an element of a greater offense than the one covered by the jury's verdict" (*Apprendi*, 530 U.S. at 494 n.19, 147 L. Ed. 2d at 457 n.19, 120 S. Ct. at 2365 n.19) and, as such, becomes the " 'tail which wags the dog of the substantive offense.' " *Apprendi*, 530 U.S. at 495, 147 L. Ed. 2d at 458, 120 S. Ct. at 2365, quoting *McMillan*, 477 U.S. at 88, 91 L. Ed. 2d at 77, 106 S. Ct. at 2417. Conversely, since *Apprendi*'s holding is expressly limited to instances where the enhancing factor has the ef-

---

[3]The Court's holding finally established the constitutional principle it suggested, but had avoided to pronounce, in its earlier decision of *Jones v. United States*, 526 U.S. 227, 243 n.6, 143 L. Ed. 2d 311, 326 n.6, 119 S. Ct. 1215, 1224 n.6 (1999), where in *dictum* the Court stated: "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."

[4]It must be noted that the rule announced by *Apprendi* makes no mention of any obligation on the part of the prosecution to allege the enhancing factor in the indictment. The Court's holding only provides that any fact other than a prior conviction that increases the punishment for a crime beyond the statutory maximum must be presented to the jury and proved beyond a reasonable doubt. The Court never expressly indicated that such a fact need also be alleged in the indictment. Nonetheless, when the Court's ruling is viewed as a whole, and when it is specifically considered together with the Court's statement in *Jones*, it becomes clear that facts that expose a defendant to a penalty beyond the maximum must also be pled in the indictment. Indeed, several federal courts have read *Apprendi* this way. See *United States v. Meshack*, 225 F.3d 556, 575 n.15 (5th Cir. 2000); *United States v. Aguayo-Delgado*, 220 F.3d 926, 933 (8th Cir. 2000); *United States v. Murphy*, 109 F. Supp. 2d 1059, 1062 (D. Minn. 2000); *United States v. Henderson*, 105 F. Supp. 2d 523, 535 (S.D. W. Va. 2000).

fect of increasing the penalty beyond the prescribed statutory maximum set, a court-determined fact may permissibly alter a defendant's sentence within the range provided for by the applicable statute.

The *Apprendi* ruling marks a stark departure from the approach the Court has traditionally employed in differentiating between an element of an offense and a sentencing factor. The *Apprendi* Court explicitly recognized for the first time that an accused criminal has the constitutional right to have any statutory enhancement fact that, if found, increases the penalty for a crime beyond the prescribed maximum to be treated as an element of the underlying offense. In previous decisions, the Court did not concern itself with the constitutional implications of sentencing enhancement schemes but, rather, resorted to principles of statutory interpretation. In those cases, the Court undertook a microanalysis of the relevant statute's language, structure and history in an effort to determine whether it defined a distinct offense or whether it merely set forth a factor that could be properly considered in imposing an enhanced punishment. Within its analysis, the Court also frequently considered the related matter of whether the particular enhancement factor at issue was traditionally or typically considered by the courts as a sentencing factor. See *Castillo v. United States*, 530 U.S. 120, 124-31, 147 L. Ed. 2d 94, 98-103, 120 S. Ct. 2090, 2092-96 (2000) (in a case decided three weeks before *Apprendi* was issued, the Court, in determining whether a federal statute which dramatically increased the penalty for the use or possession of a firearm when the weapon at issue is a "machinegun" constituted a separate offense, concerned itself primarily with the intent of Congress, examining the literal language of the statute and the statute's legislative history; the Court also considered whether the type of firearm in question had been typically or traditionally viewed as a sentencing factor); *Jones*, 526 U.S. at 232-40, 251-52, 143 L. Ed. 2d at 319-24, 331, 119 S. Ct. at 1219-22, 1228 (in determining whether the federal carjacking statute, which increased the maximum punishment of 15 years where either "serious bodily injury" or "death" resulted from the offense, constituted a single offense or three distinct crimes, the Court turned to statutory interpretation to ascertain Congress's intent and specifically relied on the statutory construction principle of constitutional doubt to construe the statute as establishing three separate offenses; the Court further considered whether the facts of "serious bodily injury" and "death" had been traditionally considered sentencing factors); *Almendarez-Torres v. United States*, 523 U.S. 224, 229-35, 140 L. Ed. 2d 350, 359-63, 118 S. Ct. 1219, 1224-26 (1998) (the Court resorted to principles of statutory interpre-

tation, and specifically looked to the statute's language, structure, subject matter, context, and history, to determine whether Congress intended a federal law, which elevated the maximum penalty for a deported alien reentering the country beyond a two-year prison term if the alien's initial deportation resulted from an aggravated felony conviction, to define a separate crime or simply an enhanced penalty; the Court also examined whether recidivism was a typical sentencing factor).

■ Turning to the case at hand, we initially consider the State's argument that defendant has waived the matter of his sentence's validity for our review. As the State notes, defendant did not raise his *Apprendi* challenge in his original appeal and raised that matter for the first time in his timely filed rehearing petition. As a general rule, parties may not argue new points in a petition for rehearing. *People v. Wright*, 194 Ill. 2d 1, 23 (2000). In *Wright*, the supreme court has recognized an exception to this rule where the new matter raised attacks the constitutionality of a criminal statute. *Wright*, 194 Ill. 2d at 23. According to the court, such challenges may be raised at any time because it would be fundamentally unfair to uphold a criminal conviction pursuant to an unconstitutional statute. *Wright*, 194 Ill. 2d at 23.

We believe *Wright*, while involving a challenge to the validity of a criminal statute, equally applies to cases, like the instant matter, where a defendant attacks his sentence on the basis that it was imposed pursuant to an unconstitutional sentencing procedure set forth in the Corrections Code. The fundamental unfairness to a defendant explicitly recognized by *Wright* would similarly be present in such instances. This court, in fact, has recently declined to find waiver of a defendant's *Apprendi* challenge to his sentence imposed pursuant to the mandatory Class X sentencing scheme found in section 5—5—3(c)(8) of the Corrections Code despite that challenge being raised for the first time by defendant in his rehearing petition. *People v. Lathon*, 317 Ill. App. 3d 573, 578-79 (2000); see also *People v. Wooters*, 188 Ill. 2d 500, 510, 722 N.E.2d 1102, 1108 (1999) (permitting defendant's challenge on appeal to validity of section 5—8—1(a)(1)(c)(ii) of the Corrections Code where that attack, asserted for the first time on appeal, warranted consideration given its constitutional dimension).

We further note *Apprendi* had yet to be released when we issued our original decision in the matter. Defendant thus did not have the benefit of *Apprendi* during the original portion of his appeal. Notwithstanding, the State argues the ruling in *Apprendi* is nothing new but, rather, is a restatement of the holdings announced earlier by the Court in *Jones* and *Almendarez-Torres*. The State unsuccessfully asserted the same argument before this court in *Lathon*, 317 Ill. App.

3d at 578 (noting *Jones* and *Almendarez-Torres* were each decided as a matter of statutory interpretation of federal sentencing guidelines, where *Apprendi* applied the principles established by those cases for the first time to state prosecutions), and more recently in *People v. Sutherland*, 317 Ill. App. 3d 1117, 1128-29 (2000). We likewise reject the State's argument here, and declining to apply waiver, we will address the merits of defendant's challenge to his sentence.

■ We must next resolve the question of *Apprendi*'s applicability to defendant's case. The law provides that a judicial decision announcing a new constitutional rule applicable to criminal cases is to be applied retroactively to all cases pending on direct review at the time the new constitutional rule is declared. *People v. Erickson*, 117 Ill. 2d 271, 288, 513 N.E.2d 267, 374 (1987), citing *Griffith v. Kentucky*, 479 U.S. 314, 328, 93 L. Ed. 2d 649, 661, 107 S. Ct. 708, 716 (1987). In particular, for retroactivity to be triggered, two factors must be present: (1) the case to which the new rule is to be applied was pending on direct review or was otherwise not final when the rule was declared and (2) the rule to be applied retroactively is of constitutional dimension. *People v. Dean*, 175 Ill. 2d 244, 253, 677 N.E.2d 947, 951 (1997); *Erickson*, 117 Ill. 2d at 289, 513 N.E.2d at 374.

We find both factors present in the instant case. Defendant's case was still pending on direct review and was not yet final when *Apprendi* was decided. The term "final" has been defined in the retroactivity context as " 'a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.' " *People v. Holman*, 132 Ill. 2d 128, 141, 547 N.E.2d 124, 128 (1989), quoting *Griffith*, 479 U.S. at 321 n.6, 93 L. Ed. 2d at 657 n.6, 107 S. Ct. at 712 n.6. Defendant raised his *Apprendi* challenge in a timely filed rehearing petition and at the earliest possible opportunity. Defendant's case, while at the rehearing stage, nonetheless remains before this court on direct review.

Secondly, the Supreme Court's ruling clearly announced a new rule of constitutional dimensions. Such a finding is readily apparent from the *Apprendi* opinion itself, as well as from the Court's break from its past method of resolving the proper characterization of a particular penalty enhancement statute. The *Apprendi* Court expressly predicated its holding on the Constitution's due process clauses of the fifth and fourteenth amendments and the notice and jury trial guarantees of the sixth amendment. The right of a criminal defendant to have all facts, except the fact of a prior conviction, that increase the statutory maximum penalty for an offense pled in the indictment and proved to a jury beyond a reasonable doubt is, according to the Court, deeply rooted in the Constitution and its jurisprudence.

Furthermore, in determining the validity of the New Jersey sentencing scheme under which Apprendi was punished, the Court did not seek to ascertain the state legislature's intent in enacting the statute by examining its language, structure, subject matter, context, and history. Neither did the Court place any weight on whether the enhancement fact at issue, *i.e.*, a biased purpose on the part of the offender, has been traditionally or typically viewed as a sentencing factor. Rather, the Court concerned itself solely with the principles that have developed in light of the rights guaranteed by the fifth and sixth amendments and the limits those constitutional provisions place on a legislature's ability to remove the determination of certain facts from the province of the jury which, if found, would elevate the penalty for a particular offense above its statutorily prescribed maximum.[5]

Because defendant's case remains pending, and since *Apprendi* reflects the establishment of a new constitutional principle, we find *Apprendi* applicable to the instant matter. *Lathon*, 317 Ill. App. 3d at 578-79 (applying *Apprendi* retroactively where defendant raised issue in petition for rehearing); *People v. Clifton*, 321 Ill. App. 3d 707, 732 (2000) (applying *Apprendi* retroactively to case pending on review).

Pursuant to *Apprendi*, the question presented here is whether section 5—8—1(a)(1)(b) defines a separate, aggravated offense of murder or whether that provision merely represents a factor that a court may properly consider in imposing a sentence. In resolving this question, our duty is to ascertain the effect section 5—8—1(a)(1)(b) has on the statutorily prescribed maximum imposed for a murder offense as set forth in paragraph (a)(1)(a) of that provision.

■ The State makes several attempts to demonstrate that the instant case is not covered by *Apprendi*. Each of the State's claims is based on the contention that defendant's life sentence is not beyond, but rather falls within, the prescribed statutory maximum for first degree murder. The State first contends that section 5—8—1(a)(1)(a)

---

[5]Several federal courts have held that *Apprendi*'s holding represents a new rule of constitutional law. See *United States v. Aguayo-Delgado*, 220 F.3d 926, 931-32 (8th Cir. 2000) ("[i]n *Apprendi*, the Supreme Court made it clear that the principle discussed in *Jones* is a rule of constitutional law"); *Sustache-Rivera v. United States*, 221 F.3d 8, 15 (1st Cir. 2000) (recognizing same); *United States v. Murphy*, 109 F. Supp. 2d 1059, 1062 (D. Minn. 2000) (recognizing same); *United States v. Kelly*, 105 F. Supp. 2d 1107, 1112 (S.D. Cal. 2000) (recognizing same); *United States v. Rogers*, 228 F.3d 1318, 1325-26 (11th Cir. 2000) (recognizing same); *United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir. 2000) (indicating that *Apprendi* established a new constitutional rule and applying the decision retroactively pursuant to *Griffith*).

simply provides the "typical" sentencing range for murder, and that the statutory maximum is actually life imprisonment or the death penalty as provided in section 9—1(b) of the Criminal Code of 1961 (Criminal Code) (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)). Based on its reading of the Corrections Code, the State asserts the applicable sentencing range should be referred to as 20 years in prison up to and including the death penalty.

The position posited by the State has been recently rejected by this court in *People v. Beachem*, 317 Ill. App. 3d 693, 708 (2000). There, the defendant, who was convicted of first degree murder, argued that her extended-term sentence of 90 years' imprisonment imposed under section 5—8—2(a) of the Corrections Code (730 ILCS 5/5—8—2(a) (West 1996)) ran afoul of the mandates of *Apprendi*. In asserting *Apprendi*'s inapplicability, the State claimed, like here, that the defendant's 90-year sentence did not exceed the maximum penalty for first degree murder, which, according to the State, was life or the death penalty.

This court rejected the State's reading of the Corrections Code, finding the current version of section 5—8—1(a)(1)(a), which provides a sentencing range of 20 to 60 years, reflects the prescribed statutory maximum penalty for a first degree murder offense. *Beachem*, 317 Ill. App. 3d at 706-07. The court noted that for any punishment exceeding 60 years, including either a term of life or the death penalty, to be imposed, additional aggravating factors must be found to exist. *Beachem*, 317 Ill. App. 3d at 707. The court's conclusion was further buttressed by the specific language of the extended-term provision, which explicitly provides that " 'a judge shall not sentence an offender to a term of imprisonment *in excess of the maximum sentence authorized by Section 5—8—1*' " unless certain aggravating factors are present. (Emphasis in original.) *Beachem*, 317 Ill. App. 3d at 706-07, quoting 730 ILCS 5/5—8—2(a)(1) (West 1996).

*Beachem* commands rejection of the State's contention in the present case. The predecessor version of section 5—1—8(a)(1), which is at issue here, expressly provides for a prison term of 20 to 40 years' imprisonment for first degree murder. Like the statutory schemes examined in *Beachem*, the 1985 version of the sentencing laws similarly authorizes a sentence in excess of 40 years only upon additional findings. See Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(b) (term of life imprisonment permitted if offense was "exceptionally brutal or heinous," or where any aggravating factors specified in section 9—1 of the Criminal Code, which lists the eligibility factors for a penalty of death, are present); Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(c) (term of life authorized where defendant

has previously been convicted of murder or where he was found guilty of murdering more than one victim); Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a)(1) (extended term of 40 to 80 years' imprisonment allowed where aggravating factors set forth in section 5—5—3.2 of Corrections Code are found to be present); Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b) (death penalty warranted where defendant has been convicted of murder while 18 years of age or older and where certain statutory aggravating factors are found). Additionally, the 1985 version of the extended-term provision found in section 5—8—2(a) sets forth verbatim the sentencing limitation found in the current legislation and discussed by the *Beachem* court. See Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a) (expressly referring to section 5—8—1 as setting forth the maximum punishment for first degree murder).

The State alternatively contends that *Apprendi* stands for the proposition that the prescribed statutory maximum for first degree murder, from a constitutional standpoint, and seemingly notwithstanding the express language of the enhanced penalty provision at issue in the case, must be viewed in all instances as the imposition of the death penalty. In this regard, the State argues "as the elements of first degree murder are the same regardless of whether a defendant is facing the death penalty ***, it would be absurd to find that a murder defendant facing the death penalty has no sixth amendment right to have a jury find the statutory aggravating eligibility factors, while all other murder defendants have the constitutional right to have a jury *** find the statutory factors authorizing an extended term sentence or natural life imprisonment."

The State essentially maintains that the dictates of *Apprendi* must apply equally to capital and noncapital defendants. The Supreme Court, however, specifically limited its holding in *Apprendi* to noncapital cases and was careful to note that its decision does not disturb its earlier ruling in *Walton v. Arizona*, 497 U.S. 639, 639-40, 111 L. Ed. 2d 511, 519-20, 110 S. Ct. 3047, 3049-50 (1990), where the Court rejected the argument that the Constitution mandated that judge-authorized findings of aggravating factors necessary for the imposition of the death penalty be made by a jury, and further dismissed the contention that those factors were "elements" of the underlying offense, which, according to the Court, merely represented standards to guide the decision of choosing between verdicts of death or another lesser form of punishment. *Apprendi*, 530 U.S. at 497, 147 L. Ed. 2d at 459, 120 S. Ct. at 2366. Thus, while it appears *Apprendi* extends greater constitutional protections to noncapital, rather than capital, defen-

dants, the Court has endorsed this precise principle, and we are in no position to second-guess that decision here.[6]

In a final attempt to show that the statutory maximum was not exceeded in this case, the State relies on the Seventh Circuit's recent decision in *United States v. Smith*, 223 F.3d 554 (7th Cir. 2000), for the proposition that the theoretical possibility of a certain statutory penalty of a given offense represents that offense's maximum punishment. Because a conviction of first degree murder carries the theoretical possibility of either a sentence of death or life in prison under Illinois law, the State maintains that death or life is the maximum penalty for murder.

We do not share the State's reading of *Smith*. Contrary to the State's contention, nothing in *Smith* suggests that the highest theoretical punishment for a particular crime constitutes the statutory maximum for purposes of applying *Apprendi*. Moreover, the sentencing statute in *Smith* concerned the imposition of a mandatory minimum under certain circumstances. See *Smith*, 223 F.3d at 562-63 (statute authorized range of 30 years' imprisonment to life upon a finding that the defendant participated in a continuing criminal enterprise, but set forth a mandatory minimum sentence of life for any defendant who, *inter alia*, was a principal or otherwise was a leader in such enterprise). The *Smith* court specifically indicated that *Apprendi* did not apply and noted that the Supreme Court, in *McMillan*, expressly upheld the validity of such mandatory minimum sentencing legislation. *Smith*, 223 F.3d at 565-66. The sentencing scheme in this case does not involve the imposition of a mandatory minimum punishment but, rather, authorizes an enhanced penalty upon the finding of certain specified factual circumstances.

We must now decide whether that enhancement procedure is constitutional under *Apprendi* and must specifically consider whether the sentencing factor reflected in section 5—8—1(a)(1)(b), *i.e.*, whether the murder was accompanied by "exceptionally brutal or heinous behavior indicative of wanton cruelty," represents a factual determi-

---

[6]Notably, the Illinois death penalty statute expressly provides that the eligibility factors for such a punishment must be proved by the State beyond a reasonable doubt. Ill. Rev. Stat. 1985, ch. 38, par. 9—1(f). In this regard, the death penalty statute conforms to the rule in *Apprendi*. The statute, however, does not require the State to give a defendant pretrial notice of the eligibility factors sought to be established. Our supreme court has specifically held that no constitutional right exists entitling a criminal defendant to such notification. *People v. Jones*, 123 Ill. 2d 387, 426, 528 N.E.2d 648, 666 (1988); *People v. Crews*, 122 Ill. 2d 266, 293, 522 N.E.2d 1167, 1180 (1988).

nation, and, if so, whether that determination increases the maximum penalty for murder.

Certainly, the question of whether a particular murder was accompanied by "exceptionally brutal or heinous behavior" necessarily involves an examination of, and is based upon, the factual circumstances presented by the evidentiary proofs. Further, a court's finding that a murder was accompanied by such behavior significantly increases the statutory maximum penalty from a term of 40 years' imprisonment to a term of natural life. Based on the foregoing, the "exceptionally brutal or heinous" inquiry presented by section 5—8—1(a)(1)(b) is most accurately characterized for constitutional purposes as an element of a greater crime, rather than a mere factor to be considered at sentencing. Accordingly, if the State wishes to seek an enhanced sentence for murder on the grounds that the offense was "exceptionally brutal or heinous," it must allege that factual circumstance in the relevant charging instrument and prove it to a jury beyond a reasonable doubt.[7] We note that a different division of this court in *People v. Lee*, 318 Ill. App. 3d 417, 422 (2000), and the Second District Appellate Court in *People v. Joyner*, 317 Ill. App. 3d 93, 110 (2000), have recently determined that section 5—8—1(a)(1)(b) is constitutionally infirm under *Apprendi*.

Considering the merits of defendant's challenge, the crime of murder as defined in section 9—1 of the Criminal Code did not require a finding by the jury that defendant's conduct accompanying the victim's murder was "exceptionally brutal or heinous." It is of no surprise then that the State's charging instruments make no mention of such circumstances. Further, the record is clear that defendant's jury made no finding concerning the nature of the victim's murder and specifically reveals that the jurors never considered and passed on the question of whether defendant acted brutally or heinously.

The highest punishment defendant could receive based solely on the facts reflected by the jury's verdict was the maximum term of 40 years' imprisonment. The jury's verdict authorized no greater penalty. Only when the sentencing judge, proceeding under a relaxed evidentiary standard, found an additional factual circumstance related to the crime did defendant become subject to a prison term well in excess of the maximum. That procedure, as *Apprendi* dictates, offends constitutional principles and is invalid as applied to defendant in this case. See *Beachem*, 317 Ill. App. 3d at 708 (noting the *Apprendi* Court never declared the New Jersey statute void on its face but, rather, referred to it as creating an unconstitutional procedure).

---

[7]We make no comment on whether such a procedure is properly available to the State under current Illinois law.

Since the State never alleged and proved to the jury beyond a reasonable doubt that defendant acted in an "exceptionally brutal or heinous" fashion when he murdered the victim, we vacate defendant's life sentence and remand for a sentence that is consistent with this opinion.

We affirm defendant's conviction for murder based on the reasons expressed in the unpublished portion of this opinion. We further vacate defendant's sentence of life and remand for the imposition of a new prison term that is consistent with this opinion.

Affirmed in part and reversed in part; cause remanded with directions.

CAHILL, P.J., and WOLFSON, J., concur.