846 So.2d 370 (2001)
Larry James POOLE, Sr.
v.
STATE of Alabama.
CR-99-1200.
Court of Criminal Appeals of Alabama.
August 31, 2001.
Opinion on Return to Remand February 1, 2002.
Dissenting Opinion on Overruling of Rehearing April 26, 2002.
Certiorari Denied October 11, 2002.
*372 Marcus W. Reid, Anniston, for appellant.
William H. Pryor, Jr., atty. gen.; and Kristi L. Deason and Hense R. Ellis II, asst. attys. gen., for appellee.
Melinda A. Morgan Austin, Florence; and Kathryn A. King, Florence, for amicus curiae Alabama Criminal Defense Lawyers Association, in support of the appellant.
Thomas W. Sorrells, Montgomery, for amicus curiae Alabama Office of Prosecution Services, in support of the appellee.
Alabama Supreme Court 1011556.
PER CURIAM.
The appellant, Larry James Poole, Sr., was convicted of four counts of distributing controlled substances, violations of § 13A-12-211, Ala.Code 1975, and one count of possessing a controlled substance, a violation of § 13A-12-212, Ala.Code 1975. After a sentencing hearing, the trial court sentenced Poole, on one distribution count, to 20 years' imprisonment, plus an additional 5 years' imprisonment under § 13A-12-250 and an additional 5 years' imprisonment under § 13A-12-270, Ala.Code 1975for a total of 30 years' imprisonment. On each of the other three distribution counts, the trial court sentenced Poole to 15 years' imprisonment, plus an additional 5 years under both § 13A-12-250 and § 13A-12-270for a total of 25 years' imprisonment on each count. On the possession conviction Poole was sentenced to two years' imprisonment.[1] The base sentences were to be served concurrently and the enhanced portions of each sentence were to be served consecutively.
The State's evidence tended to show the following. On March 31, 1995, a confidential informant purchased cocaine from Poole on two separate occasions. On April 1, 1995, the confidential informant made another purchase. On May 10, 1995, a large quantity of a cocaine-based substance was purchased at Poole's house. On the basis of information supplied by the informant regarding the drug transactions, officers obtained a search warrant for Poole's house. A search of Poole's house revealed crack cocaine. Poole admitted that the cocaine in the house was his, but stated that it was for his personal use.
Poole raises six issues on this direct appeal. We have resolved five of those issues by an unpublished memorandum issued today. See Poole v. State, (No. CR-99-1200) 837 So.2d 885 (Ala.Crim.App. 2001) (table). Because of the significance of one issue Poole raises, we have chosen to address it exclusively in this opinion.
Poole argued at trial and on appeal that the portions of his sentences for his distribution convictions enhanced by §§ 13A-12-250 and 13A-12-270 are unconstitutional *373 because, he says, the underlying facts upon which the enhancements were based were not proven beyond a reasonable doubt. Poole was charged in a five-count indictment with four counts of distributing controlled substances, violations of § 13A-12-211, and one count of possessing a controlled substance, a violation of § 13A-12-212. The indictment did not contain any reference to § 13A-12-250 and § 13A-12-270, Ala.Code 1975. Poole's indictment tracked the language of § 13A-12-211, which states: "A person commits the crime of unlawful distribution of controlled substances if, except as otherwise authorized, he sells, furnishes, gives away, manufactures, delivers or distributes a controlled substance enumerated in Schedules I through V." Poole was given notice of the State's intention to seek the enhanced sentences for his distribution convictions. He filed an extensive brief opposing the implementation of these two statutory enhancements. This issue was preserved for appellate review.

The Apprendi Decision

The argument raised at trial and on appeal requires an examination of the United States Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In that case, Apprendi pleaded guilty to two counts of second-degree possession of a firearm for an unlawful purpose and to one count of unlawfully possessing an "antipersonnel bomb." A New Jersey statute provided that a sentence could be enhanced if the crime was motivated by "bias." New Jersey sought to invoke this statute. After a hearing, the trial court, based on the testimony from the witness stand, found by a preponderance of the evidence that the crime was motivated by racial bias. The trial court then enhanced Apprendi's sentence. Apprendi specifically reserved the right to challenge this enhancement on appeal. Apprendi argued that due process required that the question whether the crime was motivated by bias be presented to a jury and proven beyond a reasonable doubt. The New Jersey Supreme Court upheld the enhanced sentence. The United States Supreme Court reversed. Citing earlier decisions, the United States Supreme Court stated:
"It was in McMillan v. Pennsylvania, 477 U.S. 79 (1986), that this Court, for the first time, coined the term `sentencing factor' to refer to a fact that was not found by a jury but that could affect the sentence imposed by the judge. That case involved a challenge to the State's Mandatory Minimum Sentencing Act, 42 Pa. Cons.Stat. § 9712 (1982). According to its provisions, anyone convicted of certain felonies would be subject to a mandatory minimum penalty of five years imprisonment if the judge found, by a preponderance of the evidence, that the person `visibly possessed a firearm' in the course of committing one of the specified felonies. 477 U.S., at 81-82. Articulating for the first time, and then applying, a multifactor set of criteria for determining whether the [In the Matter of] Winship [, 397 U.S. 358 (1970)] protections applied to bar such a system, we concluded that the Pennsylvania statute did not run afoul of our previous admonitions against relieving the State of its burden of proving guilt, or tailoring the mere form of a criminal statute solely to avoid Winship's strictures. 477 U.S., at 86-88.
"We did not, however, there budge from the position that (1) constitutional limits exist to States' authority to define away facts necessary to constitute a criminal offense, id., at 85-88, and (2) that a state scheme that keeps from the *374 jury facts that `expos[e] [defendants] to greater or additional punishment,' id., at 88, may raise serious constitutional concern. As we explained:
"`Section 9712 neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm.... The statute gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense. Petitioners' claim that visible possession under the Pennsylvania statute is "really" an element of the offenses for which they are being punishedthat Pennsylvania has in effect defined a new set of upgraded felonieswould have at least more superficial appeal if a finding of visible possession exposed them to greater or additional punishment, cf. 18 U.S.C. § 2113(d) (providing separate and greater punishment for bank robberies accomplished through "use of a dangerous weapon or device"), but it does not.' Id., at 87-88.
"Finally, as we made plain in Jones [v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)] last Term, Almendarez-Torres v. United States, 523 U.S. 224 (1998), represents at best an exceptional departure from the historic practice that we have described. In that case, we considered a federal grand jury indictment, which charged the petitioner with `having been "found in the United States ... after being deported,"' in violation of 8 U.S.C. § 1326(a)an offense carrying a maximum sentence of two years. 523 U.S., at 227. Almendarez-Torres pleaded guilty to the indictment, admitting at the plea hearing that he had been deported, that he had unlawfully reentered this country, and that `the earlier deportation had taken place "pursuant to" three earlier "convictions" for aggravated felonies.' Ibid. The Government then filed a presentence report indicating that Almendarez-Torres' offense fell within the bounds of § 1326(b) because, as specified in that provision, his original deportation had been subsequent to an aggravated felony conviction; accordingly, Almendarez-Torres could be subject to a sentence of up to 20 years. Almendarez-Torres objected, contending that because the indictment `had not mentioned his earlier aggravated felony convictions,' he could be sentenced to no more than two years in prison. Ibid.
"Rejecting Almendarez-Torres' objection, we concluded that sentencing him to a term higher than that attached to the offense alleged in the indictment did not violate the strictures of Winship in that case. Because Almendarez-Torres had admitted the three earlier convictions for aggravated feloniesall of which had been entered pursuant to proceedings with substantial procedural safeguards of their ownno question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the Court. Although our conclusion in that case was based in part on our application of the criteria we had invoked in McMillan, the specific question decided concerned the sufficiency of the indictment. More important, as Jones [v. United States, 526 U.S. 227 (1999)] made crystal clear, 526 U.S., at 248-249, our *375 conclusion in Almendarez-Torres turned heavily upon the fact that the additional sentence to which the defendant was subject was `the prior commission of a serious crime.' 523 U.S., at 230; see also id., at 243 (explaining that `recidivism... is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence'); id., at 244 (emphasizing `the fact that recidivism "does not relate to the commission of the offense ..."'); Jones, 526 U.S., at 249-250, n. 10 (`The majority and the dissenters in Almendarez-Torres disagreed over the legitimacy of the Court's decision to restrict its holding to recidivism, but both sides agreed that the Court had done just that'). Both the certainty that procedural safeguards attached to any `fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that `fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a `fact' increasing punishment beyond the maximum of the statutory range.
"Even though it is arguable that Almendarez-Torres was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, Apprendi does not contest the decision's validity and we need not revisit it for purposes of our decision today to treat the case as a narrow exception to the general rule we recalled at the outset. Given its unique facts, it surely does not warrant rejection of the otherwise uniform course of decision during the entire history our jurisprudence.
"In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in Jones. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: `[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.' 526 U.S., at 252-253 (opinion of Stevens, J.); see also id., at 253 (opinion of Scalia, J.)"
530 U.S. at 485-90, 120 S.Ct. 2348 (emphasis added; footnotes omitted). The Apprendi Court specifically excluded from its holding proof of prior convictions necessary to invoke a habitual felony offender act. 530 U.S. at 490, 120 S.Ct. 2348. See State v. Sanko, 62 Conn.App. 34, 771 A.2d 149, cert. denied, 256 Conn. 905, 772 A.2d 599 (2001) (Apprendi does not apply to prior convictions and admissions). The Supreme Court also excluded capital-sentencing schemes from its holding. 530 U.S. at 493, 120 S.Ct. 2348.
The United States Supreme Court released its decision in Apprendi while Poole's direct appeal was pending in this Court. Apprendi is applicable to all cases that were pending on direct appeal at the time of its release. See Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

Prior Apprendi Decisions in Alabama

This Court has addressed the Apprendi decision in two opinions. In Sanders v. *376 State, 815 So.2d 590 (Ala.Crim.App.2001), we held that Apprendi does not apply retroactively to cases not on direct appeal. A review of cases from other states and from federal jurisdictions reflects that courts are divided on whether the Apprendi holding should be applied retroactively. It appears that the majority of the courts have held that Apprendi does not apply retroactively to cases on collateral review. One court, though ultimately refusing to resolve the question, stated:
"A new rule of constitutional criminal procedure is normally applied retroactively to all cases pending direct review when the rule is announced. Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). There is no apparent dispute that for purposes of retroactivity analysis the Apprendi decision established a new rule of constitutional law. See, e.g., Jones v. Smith, 231 F.3d 1227, 1236 (9th Cir.2000). However, in Teague v. Lane, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the United States Supreme Court held a new constitutional rule of criminal procedure is not to be applied retroactively to cases on collateral review of final judgments of conviction unless the rule falls within one of two narrow exceptions: the first, when the new rule places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe, and the second, when the new rule is a `watershed' rule of criminal procedure whose non-application would seriously diminish the likelihood of an accurate conviction or which requires the observance of procedures that are implicit in the concept of ordered liberty. Teague, 489 U.S. at 307, 313, 109 S.Ct. 1060, 103 L.Ed.2d 334. Using the Teague analysis, the federal courts are divided on the question of whether the Apprendi decision should be applied retroactively in cases involving collateral review of a conviction.
"At least two federal district courts have concluded the Apprendi rule, requiring a jury to find beyond a reasonable doubt any fact which is the basis for imposing an enhanced sentence beyond the statutory maximum for the crime committed, `is so grounded in fundamental fairness that it may be considered of watershed importance' and should be retroactively applied to cases involving collateral review of a conviction. United States v. Murphy, 109 F.Supp.2d 1059, 1064 (D.Minn.2000); Darity v. United States, 124 F.Supp.2d 355 (W.D.N.C. 2000). Other federal courts, applying a Teague analysis, have concluded the Apprendi decision should not be given retroactive application to cases on collateral review. Jones v. Smith, 231 F.3d 1227, 1236 (9th Cir.2000); United States v. Johnson, 126 F.Supp.2d 1222 (D.Neb. 2000); West v. United States, 123 F.Supp.2d 845 (D.Md.2000); see also United States v. Pittman, 120 F.Supp.2d 1263, 1271 (D.Or.2000)."
Clark v. State, 621 N.W.2d 576, 578-79 (N.D.2001), cert. denied, 532 U.S. 1043, 121 S.Ct. 2010, 149 L.Ed.2d 1011 (2001). See also People v. Jones, 321 Ill.App.3d 515, 254 Ill.Dec. 662, 747 N.E.2d 1074 (2001); Levan v. United States, 128 F.Supp.2d 270 (E.D.Pa.2001); United States v. Gibbs, 125 F.Supp.2d 700 (E.D.Pa.2000); United States v. Moss, 137 F.Supp.2d 1249 (D.C.Kan.2001). Cf. People v. Kaczmarek, 318 Ill.App.3d 340, 251 Ill.Dec. 953, 741 N.E.2d 1131 (2000); People v. Beachem, 317 Ill.App.3d 693, 251 Ill.Dec. 308, 740 N.E.2d 389 (2000). We agree with the Moss court:
"Apprendi does not qualify as a watershed rule of criminal procedure. Apprendi announced two new rules of criminal procedure: (1) other than the *377 fact of a prior conviction, the jury, not the judge, must determine any facts that increase the penalty for a crime beyond the statutory maximum and (2) the jury must find such facts beyond a reasonable doubt. See Apprendi, 120 S.Ct. at 2362-63. These rules do not alter our basic understanding of the bedrock procedural requirements essential to a fair proceeding (such as the right to counsel)."
We question whether the Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), analysis has any application to the Apprendi holding. Teague specifically addressed the accuracy of the underlying conviction, not the propriety of the sentence as is implicated by the Apprendi holding.
Justice Thomas recently expressed the greatest support for the view that Apprendi should not be applied retroactively. In Tyler v. Cain, 533 U.S. 656, 666 n. 7, 121 S.Ct. 2478 n. 7, 150 L.Ed.2d 632 n. 7 (2001), Justice Thomas, writing for the Court, stated:
"As explained above, the second Teague exception is available only if the new rule `"`alter[s] our understanding of the bedrock procedural elements'" essential to the fairness of a proceeding.' Sawyer v. Smith, 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990)(quoting Teague v. Lane, 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion), in turn quoting Mackey v. United States, 401 U.S. 667, 693, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in judgments in part and dissenting in part) (emphasis added)). Classifying an error as structural does not necessarily alter our understanding of these bedrock procedural elements. Nor can it be said that all new rules relating to due process (or even the `fundamental requirements of due process,' see post, at 2489 (dissenting opinion)) alter such understanding. See, e.g., Sawyer, supra, at 244, 110 S.Ct. 2822 (holding that the rule in Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) [holding that it was unconstitutional for a death sentence to be imposed by sentencer who was led to believe that responsibility for determining death rested elsewhere], did not fit within the second Teague exception even though it `added to an existing guarantee of due process protection against fundamental unfairness'); O'Dell v. Netherland, 521 U.S. 151, 167, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) (holding that the rule in Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) [defendant's due-process rights were violated when state argued future dangerousness and the trial court refused to instruct the jury that a sentence of life imprisonment meant no possibility of parole], which has been described as serving `one of the hallmarks of due process,' id., at 175 (O'Connor, J., concurring in judgment), did not fit within the second Teague exception). On the contrary, the second Teague exception is reserved only for truly `watershed' rules. See O'Dell, supra at 167, 117 S.Ct. 1969; see also Caspari v. Bohlen, 510 U.S. 383, 396, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (describing such rules as `groundbreaking'); Graham v. Collins, 506 U.S. 461, 478, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (explaining that the exception is limited to `a small core of rules,' which not only seriously enhance accuracy but also `requir[e] "observance of those procedures that ... are implicit in the concept of ordered liberty"') (quoting Teague, supra, at 311, 109 S.Ct. 1060 (internal quotation marks omitted)); Saffle v. Parks, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (focusing on `primacy *378 and centrality' of the rule). As we have recognized, it is unlikely that any of these watershed rules `ha[s] yet to emerge.' Sawyer, supra, at 243, 110 S.Ct. 2822 (quoting Teague, supra, at 313, 109 S.Ct. 1060 (plurality opinion)); see also Graham, supra, at 478, 113 S.Ct. 892."
(Bracketed language summarizing cases added.) See also Laurie L. Levenson, Charging and Sentencing after Apprendi, reference material for a Federal Judicial Center broadcast on the FJTN (first broadcast on December 13, 2000) ("[T]he Court has yet to find any ruling that qualifies for this [Teague] exception, and it seems unlikely to us that the Apprendi rule will be the first."). We continue to follow our holding in Sanders that Apprendi will not be applied retroactively to cases on collateral review.
In Pearson v. State, 794 So.2d 448 (Ala. Crim.App.2001), we also addressed the Apprendi holding. In Pearson, we held that although Pearson's sentence was enhanced it was still within the statutory range; therefore, any possible violation of the Apprendi rule was harmless. Other states have applied the harmless error analysis to an Apprendi violation. See State v. Cody, 27 Kan.App.2d 1037, 10 P.3d 789 (2000) (Apprendi does not apply because the defendant admitted "to all of the facts that provided the basis for the sentencing court's departure"); Clark v. State, supra (Apprendi does not warrant remand because the use of a firearm was never an issue; the defendant alleged that he fired in self-defense); State v. Greenwalt, [No. 00AP090061, January 11, 2001] (Ohio Ct. App.2001) (unpublished) (Apprendi is not applicable to sex-offender registration because the requirement that a sex offender register is not a penalty); People v. Maiden, 318 Ill.App.3d 545, 252 Ill.Dec. 896, 743 N.E.2d 1052 (2001), appeal denied, 195 Ill.2d 588, 258 Ill.Dec. 98, 755 N.E.2d 481 (2001) (sentence did not exceed statutory maximum; thus, Apprendi did not apply). See also State v. Palermo, 765 So.2d 1139 (La.Ct.App.2000); Kijewski v. State, 773 So.2d 124 (Fla.Dist.Ct.App.2000); People v. Whitaker, 32 P.3d 511 (Colo.App.2000); United States v. Garcia-Guizar, 234 F.3d 483 (9th Cir.2000), cert. denied, 532 U.S. 984, 121 S.Ct. 1629, 149 L.Ed.2d 490 (2001); United States v. Nance, 236 F.3d 820 (7th Cir.2000); United States v. Nealy, 232 F.3d 825 (11th Cir.2000).

Application of Apprendi in the Present Case

This is our third opportunity to address the effect of Apprendi on Alabama law. We heard oral arguments on this case, and we requested that the Alabama Office of Prosecution Services and the Alabama Criminal Defense Lawyers Association appear as amici curiae. After evaluating the arguments of the parties and the abundant caselaw interpreting Apprendi, we conclude as follows.
Poole's sentences for his convictions for distributing controlled substances were enhanced pursuant to § 13A-12-250 and § 13A-12-270. Section 13A-12-250 reads as follows:
"In addition to any penalties heretofore or hereafter provided by law for any person convicted of an unlawful sale of a controlled substance, there is hereby imposed a penalty of five years incarceration in a state corrections facility with no provision for probation if the situs of such unlawful sale was on the campus or within a three-mile radius of the campus boundaries of any public or private school, college, university or other educational institution in this state."
Section 13A-12-270 states as follows:

*379 "In addition to any penalties heretofore or hereafter provided by law for any person convicted of an unlawful sale of a controlled substance, there is hereby imposed a penalty of five years incarceration in a state corrections facility with no provision for probation if the situs of such unlawful sale was within a three-mile radius of a public housing project owned by a housing authority."
This Court had traditionally held that the above statutes did not create a new offense but were merely sentencing factors for a trial court to apply. Pettway v. State, 624 So.2d 696, 699 (Ala.Crim.App.), cert. denied, 624 So.2d 700 (Ala.1993). The Alabama Legislature classified these statutes as sentencing enhancements, i.e., the title to each Code section refers to the provision as an, "Additional Penalty." To invoke either provision the State must prove the underlying facti.e., that the sale occurred within a three-mile radius of a school or a public housing projectto the sentencing judge "by a preponderance of the evidence." Wild v. State, 761 So.2d 261 (Ala.Crim.App.1999); Lane v. State, 644 So.2d 1318 (Ala.Crim.App.1994); Powell v. State, 600 So.2d 1085 (Ala.Crim.App. 1992). Also, the indictment need not refer to these enhancement provisions. See Smith v. State, 589 So.2d 798 (Ala.Crim. App.1991); Lane v. State, 564 So.2d 90 (Ala.Crim.App.1990); Harrison v. State, 560 So.2d 1124 (Ala.Crim.App.1989). The holding in Apprendi is a dramatic departure from established Alabama caselaw.
The first question we must resolve is whether the required facthere, whether the sales occurred within three miles of a school or a housing projectsubjected the defendant to a greater punishment than that prescribed by the Legislature in § 13A-5-6, Ala.Code 1975. This question must be answered in the affirmative to implicate Apprendi. Distributing a controlled substance is a Class B felony punishable by a maximum of 20 years in the state penitentiary. Here, the appellant also faced an additional penalty of 10 years for each distribution conviction. Poole was sentenced to in excess of 20 years for each conviction for distributing a controlled substance. The parties to the appeal and the amici curiae agree that Apprendi applies to the imposition of §§ 13A-12-250 and 13A-12-270 in this case.
As of this date, approximately one year after Apprendi was decided, many state and federal courts have cited the decision. Because Alabama has had little opportunity to consider the effects of the Apprendi holding, we have looked to the courts of other states and to federal courts for guidance.
A review of the decisions addressing Apprendi reflects that courts have applied its holding to many different enhancement statutes. See State v. Johnson, 166 N.J. 523, 766 A.2d 1126 (2001) (enhancement for "violent" offenders); Clark v. State, supra (enhancement for use of a "firearm" during the commission of a offense); People v. Kaczmarek, supra (enhancement of a murder conviction because the murder was "exceptionally brutal or heinous"); State v. Guice, 141 N.C.App. 177, 541 S.E.2d 474 (2000) (firearm-enhancement statute); State v. Davis, 255 Conn. 782, 772 A.2d 559 (2001) (applies to firearm-enhancement statutes); State v. Ouellette, 764 A.2d 914 (2000) (applies to a sentence for an assault conviction enhanced because "defendant knew that the victim was law enforcement officer acting in the line of duty"); State v. Grossman, 622 N.W.2d 394 (Minn.App.2001) (sexual-offender statute that increased sentence for repeat offenders beyond the maximum after a court determined that offender was a "danger to public safety" was unconstitutional based on Apprendi); Parise v. United States, *380 117 F.Supp.2d 204 (D.Conn.2000); and United States v. Rogers, 228 F.3d 1318 (11th Cir.2000) (Apprendi applies to drug quantities that will increase a sentence).
The courts that have found Apprendi violations have upheld the underlying convictions but have remanded the cases for the trial court to vacate the sentences and to resentence the defendants. See People v. Lee, 319 Ill.App.3d 289, 253 Ill.Dec. 304, 745 N.E.2d 78 (2001) (sentence vacated and case remanded for resentencing); State v. Grossman, 622 N.W.2d 394 (Minn. App.2001) (case remanded for resentencing); State v. Ouellette, supra (case remanded for resentencing); People v. Kaczmarek, supra (sentence vacated and case remanded for resentencing); United States v. Rogers, 228 F.3d 1318 (11th Cir. 2000) (remanded for resentencing). Our research has revealed no case that has vacated an underlying conviction because the facts on which the increased sentence were based were not alleged in the indictment.
There was an Apprendi violation in this case because the facts that resulted in the enhanced sentences were not presented to a jury and proven beyond a reasonable doubt. The question becomes, what is the remedy?
Apprendi announced a constitutional change in criminal procedure. Constitutional errors or defects are traditionally subject to a harmless error analysis. As the United States Supreme Court stated in Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999):
"We have recognized that `most constitutional errors can be harmless.' [Arizona v.] Fulminante, [499 U.S. 279] at 306[, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)]. `[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutiona[l] errors that may have occurred are subject to harmless-error analysis.' Rose v. Clark, 478 U.S. 570, 579 (1986). Indeed, we have found an error to be `structural,' and thus subject to automatic reversal, only in a `very limited class of cases.'"
527 U.S. at 8, 119 S.Ct. 1827. The Neder Court held that a jury instruction "that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." 527 U.S. at 9, 119 S.Ct. 1827.
As the United States Supreme Court stated in Neder, a constitutional error amounts to a structural error and it will invalidate the proceedings only in limited circumstances. As the United States Court of Appeals for the First Circuit stated in United States v. Mojica-Baez, 229 F.3d 292 (1st Cir.2000), cert. denied, 532 U.S. 1065, 121 S.Ct. 2215, 150 L.Ed.2d 209 (2001):
"Certain categories of error interfere with such basic and fundamental constitutional protections that they go to the structure of our criminal law system. These `structural errors' require that convictions, or sentences, be set aside without any examination of prejudice because, among other things, it would be well-nigh impossible to determine the amount of harm. The harm caused by these types of error is surely great, though, as when a defendant is deprived of counsel, see Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), or when the trial judge is biased, see Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)....
"The error in this case is not of that dimension. No interest in safeguarding fair trials or vindicating compelling constitutional policies would be served by *381 classifying the error here as structural. Nor do we think the integrity of the judicial system is implicated. See Johnson, 520 U.S. [461] at 469-70, 117 S.Ct. 1544, 137 L.Ed.2d 718 [(1997)]. The reasons the indictment in this case did not specify that a semiautomatic assault weapon or AK-47 had been used in the robbery was that circuit precedent at the time did not require it. After the defendants in this case were convicted, but prior to their sentencing, we decided that § 924(c)(1)'s subsections defined sentencing factors and not elements of separate offenses. See United States v. Shea, 150 F.3d 44, 51 (1st Cir.), cert. denied, 525 U.S. 1030, 119 S.Ct. 568, 142 L.Ed.2d 473 (1998). It is one thing to vacate a conviction or sentence where the prosecutor failed to indict in accordance with the current state of the law. It is quite another thing to vacate a conviction or sentence based on an indictment that was entirely proper at the time. Neither the prosecution nor the defense counsel in this case anticipated that the Supreme Court would rule as it did in Castillo [v. United States, 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000)]."
229 F.3d at 309-10.
We do not believe that Apprendi requires a finding of a "structural" defect in the proceedings against Poole. This is consistent with our holding that Apprendi should not be applied retroactively to cases on collateral review. (See cases cited above.) The failure to include in the indictment any applicable sentence-enhancement factors, although error, would not void the indictment or annul the jurisdiction of the trial court. Therefore, it is not necessary for this Court to vacate Poole's convictions. Poole agrees. Poole argues in his brief to this Court that he should be resentenced. We agree that Poole should be resentenced without regard to the statutory sentencing-enhancement provisions of §§ 13A-12-250 and 13A-12-270.
Moreover, constitutional defects must be objected to in the trial court before we may review them on appeal. See Barrett v. State, 705 So.2d 529 (Ala.Crim. App.1996); Puckett v. State, 680 So.2d 980 (Ala.Crim.App.1996); Andersen v. State, 418 So.2d 967 (Ala.Crim.App.1982); Hansen v. State, 598 So.2d 1 (Ala.Crim.App. 1991); Cagle v. State, 504 So.2d 1225 (Ala. Crim.App.1987); Crosslin v. State, 540 So.2d 98 (Ala.Crim.App.1988). Therefore, before this Court will review an alleged Apprendi violation, the defendant must object in the trial court. The United States Supreme Court in Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), a case released one year before Apprendi, forecast its holding in Apprendi; the Court in Jones held that any fact that increases a penalty above the statutory range must be alleged in a federal indictment.

Should the Enhancement be Charged in the Indictment?
The parties and the amici curiae have asked us to adopt the position that a fact that could elevate a sentence above the statutory maximum must be alleged in the indictment. After much debate, we decline to endorse this position.
Unlike the two judges of this Court who have chosen to write specially in this case, we do not believe that the decision in Apprendi is a precursor to the United States Supreme Court's holding that the fact that increases a penalty above the statutory maximum must be charged in a state indictment.[2] A footnote in Apprendi *382 sheds light on this issue. In that footnote, the United States Supreme Court stated the following:
"Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. He relies entirely on the fact that the `due process of law' that the Fourteenth Amendment requires the States to provide to persons accused of crimes encompasses the right to a trial by jury, Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and the right to have every element of the offense proved beyond a reasonable doubt, In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). That Amendment has not, however, been construed to include the Fifth Amendment right to `presentment or indictment of a Grand Jury' that was implicated in our recent decision in Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). We thus do not address the indictment question separately today."
530 U.S. at 477 n. 3, 120 S.Ct. 2348.
The Fifth Amendment to the United States Constitution states, in relevant part, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." Article I, § 6, of the Alabama Constitution of 1901, provides, "That in all criminal prosecutions, the accused has a right to be heard by himself and counsel or either; to demand the nature and cause of the accusation; and to have a copy thereof." Amendment No. 598, amending Art. XIV, § 8, Ala.Const. 1901, as previously amended by Amendment 37, also provides:
"No person shall for any indictable offense be proceeded against criminally by information, except in cases arising in the militia and volunteer forces when in actual service, or when assembled under arms as a military organization, or, by leave of the court, for misfeasance, misdemeanor, extortion, and oppression in office, otherwise than is provided in the Constitution. In cases of misdemeanor, the Legislature may by law dispense with a grand jury and authorize prosecutions and proceedings before any inferior courts as may be by law established. In all felony cases, except those punishable by capital punishment, the Legislature may by law dispense with a grand jury and authorize prosecutions and proceedings in any manner as may be provided by law if the defendant, after having had the advice of counsel of his or her choice or in the event he or she is unable to employ counsel, the advice of counsel which shall be appointed by the court, makes known in open court to a judge of a court having jurisdiction of the offense that he or she desires to plead guilty."
The Apprendi footnote quoted above relies on prior decisions of the United States Supreme Court as far back as 1884 with its decision in Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884). In Hurtado, the Court recognized that due process of law, as applied to the individual states by the Fourteenth Amendment of the United States Constitution, did not apply to state grand jury proceedings. The Hurtado v. California Court explained:
"[The Fifth Amendment of the United States Constitution] declares that `no *383 person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall he be compelled in any criminal case to be a witness against himself.' It then immediately adds: `nor be deprived of life, liberty, or property without due process of law.' According to a recognized canon of interpretation, especially applicable to formal and solemn instruments of constitutional law, we are forbidden to assume, without clear reason to the contrary, that any part of this most important amendment is superfluous. The natural and obvious inference is that, in the sense of the constitution, `due process of law' was not meant or intended to include, ex via termini, the institution and procedure of a grand jury in any case. The conclusion is equally irresistible, that when the same phrase was employed in the fourteenth amendment to restrain the action of the states, it was used in the same sense and with no greater extent; and that if in the adoption of that amendment it had been part of its purpose to perpetuate the institution of the grand jury in all the states, it would have embodied, as did the fifth amendment, express declarations to that effect. Due process of law in the latter refers to that law of the land which derives its authority from the legislative powers conferred upon congress by the constitution of the United States, exercised within the limits therein prescribed, and interpreted according to the principles of the common law. In the fourteenth amendment, by parity of reason, it refers to that law of the land in each state which derives its authority from the inherent and reserved powers of the state, exerted within the limits of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, and the greatest security for which resides in the right of the people to make their own laws, and alter them at their pleasure. `The fourteenth amendment,' as was said by Mr. Justice Bradley in Missouri v. Lewis, 101 U.S. 22-31, `does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two states separated only by an imaginary line. On one side of this line there may be a right of trial by jury, and on the other side no such right. Each state prescribes its own modes of judicial proceeding.'"
This principle was again cited in Alexander v. Louisiana, 405 U.S. 625, 633, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972):
"In Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the Court held that because trial by jury in criminal cases under the Sixth Amendment is `fundamental to the American scheme of justice,' id., at 149, 88 S.Ct., at 1447, such a right was guaranteed to defendants in state courts by the Fourteenth Amendment, but the Court has never held that federal concepts of a `grand jury,' binding on the federal courts under the Fifth Amendment, are obligatory for the States."
Once again in Patterson v. New York, 432 U.S. 197, 201-02, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the United States Supreme Court stated:
"It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government, Irvine v. California, 347 U.S. 128, 134, 74 S.Ct. 381, *384 384, 98 L.Ed. 561 (1954) (plurality opinion), and that we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally `within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion,' and its decision in this regard is not subject to proscription under the Due Process Clause unless `it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' Speiser v. Randall, 357 U.S. 513, 523, 78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460 (1958); Leland v. Oregon, 343 U.S. 790, 798, 72 S.Ct. 1002, 1007, 96 L.Ed. 1302 (1952); Snyder v. Massashusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)."
More recently, Justice Thomas, in his special concurrence in Apprendi, noted:
"This case turns on the seemingly simple question of what constitutes a `crime.' Under the Federal Constitution, `the accused' has the right (1) `to be informed of the nature and cause of the accusation' (that is, the basis on which he is accused of a crime), (2) to be `held to answer for a capital, or otherwise infamous crime' only on an indictment or presentment of a grand jury, and (3) to be tried by `an impartial jury on the State and district wherein the crime shall have been committed.' Amdts. 5 and 6. See also Art. III, § 2, cl. 3 (`The Trial of all Crimes ... shall be by Jury'). With the exception of the Grand Jury Clause, see Hurtado v. California, 110 U.S. 516, 538, 4 S.Ct. 111, 28 L.Ed. 232 (1884), the Court has held that these protections apply in state prosecutions, Herring v. New York, 422 U.S. 853, 857, and n. 7, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). Further, the Court has held that due process requires that the jury find beyond a reasonable doubt every fact necessary to constitute the crime. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)."
530 U.S. at 499-500, 120 S.Ct. 2348. See also Wilkerson v. Whitley, 28 F.3d 498, 503 (1994), cert. denied, 513 U.S. 1085, 115 S.Ct. 740, 130 L.Ed.2d 642 (1995) ("[The Fifth Amendment] does not prevent states from instituting prosecutions without an indictment, and the Supreme Court has concluded that neither the Grand Jury Clause of the Fifth Amendment nor the Due Process Clause of the Fifth Amendment requires the States to afford the accused the right to grand jury review before trial," quoting Hurtado v. California, 110 U.S. 516, 534, 4 S.Ct. 111, 28 L.Ed. 232 (1884)).
Our research has revealed only one other state court that has directly addressed the effects of the Apprendi decision on state indictments. The North Carolina Court of Appeals in State v. Guice, 141 N.C.App. 177, 541 S.E.2d 474 (2000), held that Apprendi did not require that the facts that increase a sentence be alleged in the indictment. The Guice court stated:
"The defendant in this case first argues in his motion that the enhancement of his sentence under the firearm enhancement statute should be vacated, as the elements required for the enhancements, i.e., that the defendant `used, displayed, or threatened to use or display a firearm at the time of the felony,' N.C.Gen.Stat. § 15A-1340.16A, were not alleged in the second-degree kidnapping indictment. According to the defendant, the omission of such facts rendered the indictment deficient, and the trial court therefore lacked the jurisdiction to impose the firearm enhancement.

*385 "The State does not contest that these facts were not alleged in the indictment, but argues that the Apprendi decision does not require such facts to be alleged in the indictment in state cases. Notably, it is the Jones [v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)] decision, concerning the prosecution of a federal crime in federal court, that includes language ... requiring such facts to be charged in the indictment. 526 U.S. at 243 n. [6], 119 S.Ct. at 1224 n. [6], 143 L.Ed.2d at 326 n. [6]. The Apprendi Court, concerning a state prosecution of a state offense in state court, declared only that such facts `must be submitted to the jury, and proved beyond a reasonable doubt.' 530 U.S. at 491, 120 S.Ct. at 2363, 147 L.Ed.2d at 455. The issue of whether the fact in question had to be charged in the indictment was not argued to the United States Supreme Court in Apprendi, wherein that Court stated in a footnote:
"`Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. He relies entirely on the fact that the `due process of law' that the Fourteenth Amendment requires the States to provide to persons accused of crimes encompasses the right to a trial by jury, Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and the right to have every element of the offense proved beyond a reasonable doubt, In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). That Amendment has not, however, been construed to include the Fifth Amendment right to `presentment or indictment of a Grand Jury' that was implicated in our recent decision in Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). We thus do not address the indictment question separately today.'
"Id. at 477 n. 3, 120 S.Ct. at 2356 n. 3, 147 L.Ed.2d at 447 n. 3 (emphasis added).
"Thus, the Apprendi decision does not support the defendant's assertion that `[t]he Trial Court did not have jurisdiction to impose the 60 month firearm enhancement' on the grounds that `the facts underlying their imposition were not alleged in the indictments.' Indeed, we are unaware of any United States Supreme Court case which has applied the Due Process Clause of the Fourteenth Amendment in a manner which requires that a state indictment for a state offense must contain each element and fact which might increase the maximum punishment for the crime charged. See State v. Wallace, 351 N.C. 481, 508, 528 S.E.2d 326, 343 (2000) (upholding the constitutionality of North Carolina's short-form indictment despite a challenge in light of Jones.) We are similarly unaware of any binding case law from any other federal courts, or from our own state courts, commanding such an outcome under either the United States Constitution or the North Carolina Constitution. The defendant's argument that the trial court was without jurisdiction to impose the 60 month firearm enhancement as the facts underlying the enhancement were not alleged in the indictment for second-degree kidnapping is therefore without merit. See Wallace, 351 N.C. at 508, 528 S.E.2d at 343."
141 N.C.App. at 191-93, 541 S.E.2d at 483-84. See State v. Johnson, 166 N.J. 523, 543 n. 2, 766 A.2d 1126 (2001).
The Apprendi Court stated that the fact that increased the sentence above the statutory maximum was the functional equivalent *386 of an element of the offense for purposes of a jury's finding of guilt beyond a reasonable doubt. The Court did not hold that the fact was by definition an element of the crime charged in a state indictment. The Apprendi Court specifically cited its earlier holding in Ex parte Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970),[3] and stated, "Since Winship, we have made clear beyond peradventure that Winship's due process and associated jury protections extend, to some degree, `to determinations that [go] not to a defendant's guilt or innocence, but simply to the length of his sentence.'" 530 U.S. at 484, 120 S.Ct. 2348. See Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Based on the language in Apprendi and on the prior holdings of that Court, we do not believe that the Supreme Court intended to impose presentment and indictment requirements on the individual states' rights to define criminal activity.
The Alabama Legislature did not intend to create new offenses, distinct and separate from § 13A-12-211, when it enacted §§ 13A-12-250 and 13A-12-270; it intended instead to provide harsher penalties, i.e., each statute is prefaced with the following language, "In addition to any penalties heretofore or hereafter provided by law for any person convicted of an unlawful sale of a controlled substance...." We have stated that the intent was to make a drug-free zone around schools and housing projects. Qualls v. State, 555 So.2d 1158 (Ala.Crim.App.1989).
Poole was charged with four counts of distributing a controlled substance, violations of § 13A-12-211(a). This section states:
"A person commits the crime of unlawful distribution of controlled substances if, except as otherwise authorized, he sells, furnishes, gives away, manufactures, delivers or distributes a controlled substance enumerated in Schedule I through V."[4]
The State also sought to have Poole's sentences enhanced because the sales occurred within three miles of a school and within three miles of a housing project. See §§ 13A-12-250 and 13A-12-270.
Our Legislature has defined the offense of distributing a controlled substance that definition does not include the location of the crime. However, under Apprendi, because this fact may result in the increase of Poole's sentence above the statutory maximum, this fact must be presented to the jury and proven beyond a reasonable doubt. The location of the crime is relevant only to the sentence Poole may receive and not to whether, in fact, Poole committed the offense of distributing a controlled substance as charged in the indictment. 530 U.S. at 484, 120 S.Ct. 2348.
To require an indictment to include any applicable enhancements would also elevate the fact that made the enhancement applicable to the exalted status of an "essential element" of the crime charged and would invite challenges to the validity of the underlying convictions in every court in this state.[5] Our refusal to endorse the *387 indictment requirement is also consistent with the views expressed by the Alabama Supreme Court in Ex parte Parker, 740 So.2d 432 (Ala.1999). In Parker, that Court held that the fact that the defendant had prior DUI convictions that would elevate a fourth conviction for DUI to a felony conviction should not be alleged in the indictment.
The implications of finding that any fact that may increase a punishment above the statutory maximum must be charged in an indictment are too enormous to mention in this opinion. Any defendant who has ever been sentenced under these statutory provisions could argue that his or her conviction was void because a "material or essential element" of the offense was not included in the indictment. When a material element is omitted from an indictment a conviction is due to be vacated and jurisdictional issues are not subject to waiver and may be raised at any time. See Ex parte Harper, 594 So.2d 1181 (Ala.1991). Neither are jurisdictional issues subject to a harmless error analysis. We also believe that the Apprendi holding implies that the failure to allege in the indictment the location of the crime does not affect the validity of the indictment, i.e., does not rise to the level of a jurisdictional defect. Had the defect in Apprendi amounted to a jurisdictional defect that would invalidate the indictment, a reviewing court would, ex mero motu, be charged with noticing the defect. See Ex parte Hargett, 772 So.2d 481 (Ala.Crim. App.1999). The Supreme Court did not hold in Apprendi that the underlying conviction was due to be vacated.

Notice
Although we do not believe it is necessary, or even the better practice, to charge any applicable sentencing enhancement in the indictment, a defendant must be given notice that the State intends to seek an additional penalty under § 13A-12-250 and/or § 13A-12-270.[6] This notice *388 requirement is sufficient to comply with the requirements of due process. Art. I, § 6, Ala. Const.1901. This view is also consistent with our caselaw on the application of the Habitual Felony Offender Act. See Connolly v. State, 602 So.2d 452 (Ala. 1992), and Rule 26.6(b)(3)(ii), Ala. R.Crim.P. Rule 26.6(b)(3)(ii) states: "At a reasonable time prior to the [sentencing] hearing, the defendant shall be given notice of the prior conviction or convictions upon which the state intends to proceed." Because Apprendi mandates that any fact that increases the sentence be submitted to a jury, we believe that notice of intent to seek a sentencing enhancement should be given at a reasonable time before the start of the trial.

Verdict Forms
To comply with the Supreme Court's holding in Apprendi, the trial court should submit two verdict forms to the juryone verdict form that addresses the guilt of the accused on the distribution charge and another verdict form that addresses whether the sale occurred within a three-mile radius of a school and/or a housing project. If the State seeks to enhance the sale by both § 13A-12-250 and § 13A-12-270, two verdict forms should be submitted to the jury. The trial court should also instruct the jury that these statutory provisions must be proven beyond a reasonable doubt. We solicit the help of the Alabama Bar Institute for Continuing Legal Education (ABICLE) to craft a pattern jury instruction on this issue.[7]

Conclusion
Because this issue is correctly before this Court, by proper objection entered below, we are compelled to hold, based on the Supreme Court's decision in Apprendi, that Poole's sentences for his convictions for distributing controlled substances are due to be vacated. However, for the reasons stated above, Poole's convictions are due to be affirmed, and we have affirmed those convictions in an unpublished memorandum issued today.
To reiterate, we hold that a fact that increases a sentence above the statutory maximum need not be alleged in the indictment. The State should, however, give notice of its intention to seek these enhancements. The fact that increases the sentence must be presented to the jury and proven beyond a reasonable doubt. The holding in Apprendi does not implicate jurisdiction; therefore, proper objections must be made before an appellate court will review an Apprendi issue.
We have not seen the last of Apprendi. We are confident that Alabama courts will be grappling with the ramifications of that decision for many years to come.
For the foregoing reasons, we are remanding this case to the Circuit Court for Etowah County for that court to resentence Poole on his four convictions for distributing controlled substances.[8] (CC-95-785.01 through CC-95-785.04).
*389 Moreover, the record reflects that the trial court failed to assess the mandatory fines under the Demand Reduction Assessment Act, § 13A-12-281, for Poole's drug convictions. We therefore also instruct the trial court to assess the appropriate fines as mandated by § 13A-12-281.
Due return should be filed in this Court, no later than 45 days from the date of this decision.
AFFIRMED BY UNPUBLISHED MEMORANDUM IN PART[*]; REMANDED WITH DIRECTIONS.
McMILLAN, P.J., and BASCHAB and WISE, JJ., concur.
SHAW, J., concurs as to the unpublished memorandum; as to the opinion, concurs in result.
COBB, J., concurs as to the unpublished memorandum; as to the opinion, concurs in part and dissents in part.
SHAW, Judge, concurring in the unpublished memorandum and concurring in the result in the opinion.
The Fourteenth Amendment to the United States Constitution provides, in part: "nor shall any state deprive any person of life, liberty, or property, without due process of law."
In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court held:
"In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in Jones [v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)]. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: `[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.' 526 U.S., at 252-253, 119 S.Ct. 1215 (opinion of Stevens, J.); see also id., at 253, 119 S.Ct. 1215 (opinion of Scalia, J.)"
530 U.S. at 490, 120 S.Ct. 2348. The constitutional underpinning for this specific holding was the Court's conclusion that "when the term `sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." 530 U.S. at 494 n. 19, 120 S.Ct. 2348. For the following reasons, I believe that the constitutional implications of Apprendi are far broader than the majority acknowledges.
*390 In explaining the historical background for its decision, the Court in Apprendi stated:
"In his 1881 lecture on the criminal law, Oliver Wendell Holmes, Jr., observed: `The law threatens certain pains if you do certain things, intending thereby to give you a new motive for not doing them. If you persist in doing them, it has to inflict the pains in order that its threats may continue to be believed.' New Jersey threatened Apprendi with certain pains if he unlawfully possessed a weapon and with additional pains if he selected his victims with a purpose to intimidate them because of their race. As a matter of simple justice, it seems obvious that the procedural safeguards designed to protect Apprendi from unwanted pains should apply equally to the two acts that New Jersey has singled out for punishment. Merely using the label `sentence enhancement' to describe the latter surely does not provide a principled basis for treating them differently.

"....
"As we have, unanimously, explained, [United States v.] Gaudin, 515 U.S. [506] at 510-11, 115 S.Ct. 2310, 132 L.Ed.2d 444 [(1995)], the historical foundation for our recognition of these principles [the proscription of any deprivation of liberty without due process of law and the guarantee that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury] extends down centuries into the common law. `[T]o guard against a spirit of oppression and tyranny on the part of rulers,' and `as the great bulwark of [our] civil and political liberties,' 2 J. Story, Commentaries on the Constitution of the United States 540-541 (4th ed. 1873), trial by jury has been understood to require that `the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbors....' 4 W. Blackstone, Commentaries on the Laws of England 343 (1769).... See also Duncan v. Louisiana, 391 U.S. 145, 151-54, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).
"....
"Any possible distinction between an `element' of a felony offense and a `sentencing factor' was unknown to the practice of criminal indictment, trial by jury, and judgment by court as it existed during the years surrounding our Nation's founding. As a general rule, criminal proceedings were submitted to a jury after being initiated by an indictment containing `all the facts and circumstances which constitute the offence,... stated with such certainty and precision, that the defendant ... may be enabled to determine the species of offence they constitute, in order that he may prepare his defence accordingly... and that there may be no doubt as to the judgment which should be given, if the defendant be convicted.' J. Archbold, Pleading and Evidence in Criminal Cases 44 (15th ed. 1862).... The defendant's ability to predict with certainty the judgment from the face of the felony indictment flowed from the invariable linkage of punishment with crime. See 4 Blackstone 369-370 (after verdict, and barring a defect in the indictment, pardon or benefit of clergy, `the court must pronounce that judgment, which the law hath annexed to the crime'....)
"....
"This practice at common law held true when indictments were issued pursuant to statute. Just as the circumstances of the crime and the intent of *391 the defendant at the time of commission were often essential elements to be alleged in the indictment, so too were the circumstances mandating a particular punishment. `Where a statute annexes a higher degree of punishment to a common-law felony, if committed under particular circumstances, an indictment for the offence, in order to bring the defendant within that higher degree of punishment, must expressly charge it to have been committed under those circumstances, and must state the circumstances with certainty and precision. [2 M. Hale, Pleas of the Crown 170].' Archbold, Pleading and Evidence in Criminal Cases, at 51. If, then, `upon an indictment under the statute, the prosecutor prove the felony to have been committed, but fail in proving it to have been committed under the circumstances specified in the statute, the defendant shall be convicted of the common-law felony only.' Id., at 188.
"....
"We do not suggest that trial practices cannot change in the course of centuries and still remain true to the principles that emerged from the Framers' fears `that the jury right could be lost not only by gross denial, but by erosion.' Jones, 526 U.S., at 247-48, 119 S.Ct. 1215. But practice must at least adhere to the basic principles undergirding the requirements of trying to a jury all facts necessary to constitute a statutory offense, and proving those facts beyond reasonable doubt. As we made clear in [In re] Winship, [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970),] the `reasonable doubt' requirement `has a vital role in our criminal procedure for cogent reasons.' 397 U.S., at 363, 90 S.Ct. 1068. Prosecution subjects the criminal defendant both to `the possibility that he may lose his liberty upon conviction and ... the certainty that he would be stigmatized by the conviction.' Ibid. We thus require this, among other, procedural protections in order to `provid[e] concrete substance for the presumption of innocence,' and to reduce the risk of imposing such deprivations erroneously. Ibid. If a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not at the moment the State is put to proof of those circumstancesbe deprived of protections that have, until that point, unquestionably attached."
530 U.S. at 476-84, 120 S.Ct. 2348. (Some emphasis original; some emphasis added.) (Footnotes omitted.)
It appears to me that, by these statements, the United States Supreme Court has clearly recognized that serious Fourteenth Amendment due-process concerns arise when a state defines away facts necessary to constitute a criminal offense by statutorily classifying those facts as sentence-enhancement factors, thereby sanctioning a process that denies an accused the essential and mandatory procedural safeguards that have historically been available to those accused of a criminal offenseprocedural safeguards that, in fact, are available to others accused of different felony offenses. The Court in Apprendi noted that "[t]he New Jersey procedure challenged in this case is an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." 530 U.S. at 497, 120 S.Ct. 2348. The core rationale of Apprendi was that an accused has a due-process right under the Fourteenth Amendment to the protections afforded by traditional procedural safeguards a state has put in place to ensure that a person is *392 not charged and convicted of one offense and then punished for another, greater offense. I attach no less significance to Alabama's constitutional indictment requirement than I do to this state's constitutionally guaranteed right to a trial by jury.
Because the issue was not presented in Apprendi, the Court did not hold that the Fourteenth Amendment requires sentence-enhancement factors of the kind at issue here to be charged in an indictment. Furthermore, the Court left open the question whether the Fifth Amendment right to "presentment or indictment of a Grand Jury" might be held applicable to the states through the Fourteenth Amendment, see 530 U.S. at 477 n. 3, 120 S.Ct. 2348.[9] However, the Court expressly held that the due-process guarantee of the Fourteenth Amendment required that sentence-enhancement factors, when used to increase a sentence beyond the statutory maximum, must be treated as elements of a greater offense than the one covered by the jury's guilty verdict. I believe that that aspect of the Apprendi holding necessarily triggered the application of this state's constitutional and statutory law governing the fundamental procedures by which those accused of a felony offense are formally charged.[10]
*393 I see nothing to suggest that the Alabama Legislature intended for the sentence-enhancement factors included in § 13A-12-250 and § 13A-12-270, Ala. Code 1975, to be considered elements of a felony offense. I am also cognizant of the fact that the Alabama Legislature is vested with the authority to define criminal offenses and to fix the punishment for committing those offenses. However, by virtue of the Supremacy Clause, Article VI, United States Constitution, Apprendi is controlling with respect to the specific question whether the sentence-enhancement factors in §§ 13A-12-250 and 13A-12-270 must be viewed as, and treated as, material elements of a greater felony offense for purposes of determining which procedural due-process protections are mandatory under state law. Before Apprendi, §§ 13A-12-250 and 13A-12-270 were in violation of the Fourteenth Amendment because the sentencing factors in those statutes, as applied under Alabama law, did not have to be proven to a jury beyond a reasonable doubt. I believe that in order to preserve the viability of these statutes, and in order to achieve the policy goals they were intended to further, see Elston v. State, 687 So.2d 1239 (Ala.Crim.App.1996), this Court should heed the warning signals sounded in Apprendi, and hold that the full panoply of state due-process protections must be accorded to those subject to sentence enhancement within the context of Apprendi.
Therefore, because the sentence-enhancement factors set out in §§ 13A-12-250 and 13A-12-270 are, as a matter of federal constitutional law, the functional equivalent of an element of a greater offense, an element that, by definition, is material because it must be proven to a jury beyond a reasonable doubt and because it provides the jurisdictional basis for imposing the enhanced sentence, I would hold that a grand jury must first find probable cause to believe that these sentence-enhancement factors can be proven and that the factors must be alleged in the indictment.[11] See Art. I, § 6, Ala. Const.; Amendment 37, Ala. Const., amending Art. I, § 8; Rule 13.2, Ala. R.Crim.P.; Summers v. State, 348 So.2d 1126, 1132 (Ala.Crim.App.1977), cert. denied, 348 So.2d 1136 (Ala.1977), and cert. denied, 434 U.S. 1070, 98 S.Ct. 1253, 55 L.Ed.2d 773 (1978) ("The constitutional right of an accused to demand the nature and cause of the accusation against him is not a technical right, but is fundamental and essential to the guaranty that no person shall be deprived of his liberty except by due process of law, nor be twice put in jeopardy for the same offense."); Nelson v. State, 50 Ala.App. 285, 278 So.2d 734 (Ala.Crim.App.1973); Young v. State, 348 So.2d 544, 546 (Ala.Crim.App.1977) ("We must be ever mindful that the right of an accused to demand the nature and cause of the accusation is one of the cornerstones of our Bill of Rights; that he fully and intelligently understands the charge against him, so that he may adequately prepare *394 his defense, is the first requirement of due process."); Newberry v. State, 493 So.2d 995, 996 (Ala.1986) ("[u]nder Article I, Section 6, the right of the accused to demand the nature and cause of the accusation is a fundamental component of the right to due process"); Kennedy v. State, 39 Ala.App. 676, 690, 107 So.2d 913, 926 (1958) ("The constitutional requisition of indictments generally in all cases of felony is not one conferring a mere personal privilege upon an accused person, but is so imbued with the public concern for due and proper administration of the law that no individual may waive it."); 42 C.J.S. Indictments and Informations, §§ 2, 4, 71, 113 (1991); 41 Am.Jur.2d Indictments and Informations §§ 2, 69, 152 (1968); H. Maddox, Alabama Rules of Criminal Procedure § 13, p. 453 (2d ed.1994). I note the following from 41 Am.Jur.2d § 2:
"At common law, and from the earliest colonial days in this country, it has been the settled rule that a formal accusation is an essential condition precedent to a valid prosecution for a criminal offense, and that no criminal proceedings can be said to be brought or instituted until a formal charge is openly made against the accused, by indictment or presentment by a grand jury...."
In Gayden v. State, 262 Ala. 468, 80 So.2d 501 (Ala.1955), Justice Simpson, writing for two other members of the Alabama Supreme Court, noted:
"Indictments must always conform to the mandates of our organic law. The emphasis in our cases `that in all criminal prosecutions, the accused has the right to demand the nature and cause of the accusation' now § 6 of the Constitution of 1901is not meaningless tautology, but one of the cornerstones of our Bill of Rights. As was observed by the late lamented Mr. Justice Brown in Spooney v. State, 217 Ala. 219, 222-223, 115 So. 308, 312;
"`"It is but an expression of the fundamental principle that inspired civilized man to form a government, the ultimate purpose of which is to protect the individual in working out his destiny, and finds expression in our Constitution in these words: `That in all criminal prosecutions the accused has a right to be heard by himself and counsel, or either; and he shall not be compelled to give evidence against himself, nor be deprived of life, liberty, or property, except by due process of law.' Constitution of Alabama 1901, §§ 6, 13.
"`"The manifest purposes of the quoted constitutional provisions, where life, liberty, and property are affected, are to secure the citizen against the arbitrary action of those in authority, and to place him under the protection of the law."'
"And that provision and the other of our Bill of Rights `are to be largely and liberally construed in favor of the citizen.' Dorman v. State, 34 Ala. 216, 238.
"We are further restrained in this case by the requirements of the Fourteenth Amendment to the Constitution of the United States. The following utterances by our Federal courts are pertinent: `No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.' Cole v. State of Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644. `The petitioner charged that he had been denied any real notice of the true nature of the charge against him, the first and most *395 universally recognized requirement of due process.' Smith v. O'Grady, Warden, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859. `An intelligent and full understanding by the accused of the charge against him is a first requirement of due process.' Bergen v. United States, 8 Cir., 145 F.2d 181, 187."
262 Ala. at 469, 80 So.2d 501. (Emphasis in original.)
And in Ross v. State, 529 So.2d 1074 (Ala.Crim.App.1988), Judge Patterson, writing for this Court, stated:
"`It is well settled, at common law and from the earliest colonial days in this country, that a prosecution for a crime must be preceded by a formal accusation. Thus, a legally effective criminal prosecution requires that a formal charge be openly made against the accused by an indictment or presentment of a grand jury, or by an information of a prosecuting attorney.'
"2 Wharton's Criminal Procedure § 225 (C. Torcia 12th ed.1974).
"`Jurisdiction of the offense and of the person must concur to authorize a court of competent jurisdiction to proceed to final judgment in a criminal prosecution. [Citations omitted.]
"`To this end, a formal accusation sufficient to apprise the defendant of the nature and cause of the accusation is a prerequisite to jurisdiction of the offense. Const.1901, § 6; Butler v. State, 130 Ala. 127, 30 South. 338; Miles v. State, 94 Ala. 106, 11 South. 403; 12 Cyc. 221 (VI, H).
"`Irregularities in obtaining jurisdiction of the person may be waived, but a formal accusation by indictment, or information, or complaint supported by oath is essential to complete jurisdiction, and cannot be waived. 12 Cyc. 221; Butler v. State, supra; Johnson v. State, 82 Ala. 29, 2 South. 466.'
"Sherrod v. State, 14 Ala.App. 57, 59-60, 71 So. 76, 78, rev'd on other ground, 197 Ala. 286, 72 So. 540 (1916). See also Albrecht v. United States, 273 U.S. 1, 8, 47 S.Ct. 250, 252-253, 71 L.Ed. 505 (1927) (wherein the Court noted, `A person may not be punished for a crime without a formal and sufficient accusation even if he voluntarily submits to the jurisdiction of the court'); Smith v. State, 25 Ala.App. 405, 407, 148 So. 858, 859-60, cert. denied, 227 Ala. 160, 148 So. 860 (1933) (wherein the court essentially adopted the quoted language of Sherrod); Cisco v. State, 23 Ala.App. 446, 446, 126 So. 610, 611 (1930) (wherein the court, in reversing a conviction for grand larceny had without an indictment, noted that `[t]his is the very teeth of section 8 of the Constitution of 1901'). (This body of law has changed to the extent that a complaint supported by oath can be waived in some instances. See City of Dothan v. Holloway, 501 So.2d 1136 (Ala.1986)).
"Section 8 of our Constitution, as amended by Amendment No. 37, requires that a felony (other than cases not pertinent here) be proceeded against by indictment, and this requirement of an indictment cannot be waived, in a felony prosecution, except under the express terms of the Amendment, when a prisoner desires to plead guilty while awaiting action of a prospective grand jury on a non-capital felony charge. Kennedy v. State, 39 Ala.App. 676, 107 So.2d 913 (1958). See also Annot., 56 A.L.R.2d 837 (1957) (wherein it was observed that this essential requisite of jurisdictionan accusation charging the commission of an offensecannot be waived; only a particular form or mode of accusation may be subject to waiver where the prosecution is based on some *396 other permissible mode of accusation). Compare City of Dothan v. Holloway. "`[T]he constitutional requisition of indictments generally in all cases of felony is not one conferring a mere personal privilege upon an accused person, but is so imbued with the public concern for due and proper administration of the law that no individual may waive it.'
"Kennedy, 39 Ala.App. at 690, 107 So.2d at 926 (discussing and adopting People ex. rel. Battista v. Christian, 249 N.Y. 314, 164 N.E. 111, 61 A.L.R. 793 (1928)). See also State ex rel. Baxley v. Strawbridge, 52 Ala.App. 685, 687, 296 So.2d 779, 781, cert. denied, 292 Ala. 506, 296 So.2d 784 (1974). More specifically, since the jurisdiction of the court, in felony cases, rests upon the utilization of a grand jury indictment or information, the requirement of such charging instrument is not waived by a guilty plea. A voluntary and understandingly made plea of guilty waives only non-jurisdictional defects. Dingler v. State, 408 So.2d 530 (Ala.1981). Cf. Tinsley v. State, 485 So.2d 1249, 1251 (Ala.Crim. App.1986) (wherein the court, in following Dingler, held that `a void indictment gives the court no jurisdiction to proceed against an accused and the defect of an indictment which fails to charge an offense is not waived by a plea of guilty')."
529 So.2d at 1077-78. The informal notice procedure adopted by the majority raises serious Fourteenth Amendment due-process and equal-protection issues.[12] The failure to require that the sentence-enhancement factors in §§ 13A-12-250 and 13A-12-270 be charged in an indictment, in my view, contravenes well-established Alabama law governing indictments and casts an unnecessary constitutional shadow over these statutes.
For the reasons stated above, I must respectfully disagree with the majority's conclusion that the sentence-enhancement factors set out in §§ 13A-12-250 and 13A-12-270 do not have to be alleged in the indictment. To summarize, I would hold that the sentence-enhancement factors set out in §§ 13A-12-250 and 13A-12-270 must be charged in an indictment, submitted to a jury on proper instructions from the trial court, and proven beyond a reasonable doubt.[13]
I do agree with the majority that Sanders v. State, 815 So.2d 590 (Ala.Crim.App. 2001), was correctly decided and that it is, therefore, due to be reaffirmed. In Sanders, this Court, applying the analysis set forth in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), held that the rule announced in Apprendi does not apply retroactively to cases that were already final when Apprendi was decided. The United States Supreme Court has defined "final' for these purposes to mean a case in which the judgment of conviction was rendered, the availability of appeal was exhausted, and the time for a petition for certiorari review had lapsed before its announcement of the new rule. Teague, 489 U.S. at 295, 109 S.Ct. 1060; see also Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). My views in this respect are generally consistent with those expressed by the United *397 States District Court for the Eastern District of Pennsylvania in Levan v. United States, 128 F.Supp.2d 270 (E.D.Pa.2001). Therefore, I would hold that this Court should, in cases on direct appeal (including cases submitted under the procedure approved in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)), provide relief from a sentence that is illegal under Apprendi, whether or not the issue was preserved by objection in the trial court. See Price v. State, 819 So.2d 82 (Ala.Crim.App.2000) (holding that matters concerning unauthorized sentences are jurisdictional and that this Court may take notice of an illegal sentence even though it was not challenged in the trial court or raised in brief on appeal); McCall v. State, 794 So.2d 1243 (Ala.Crim.App. 2000) (same); Bowles v. State, 784 So.2d 1077 (Ala.Crim.App.2000) (same); see also Ex parte McKelvey, 630 So.2d 56 (Ala. 1992).[14] In cases like Sanders, where the judgment was final before the Apprendi decision, relief under Rule 32, Ala.R.Crim. P., should not be available. However, I believe that Rule 32 relief should be available to a petitioner whose case was not final when Apprendi was decided. Of course, I would emphasize that the failure to allege in an indictment the sentence enhancement factors set out in §§ 13A-12-250 and 13A-12-270 taints only the sentence. An otherwise valid indictment for distribution of a controlled substance will support the conviction.
As a final matter, I disagreed with the harmless error analysis approved in Part II of the opinion in Pearson v. State, 794 So.2d 448 (Ala.Crim.App.2001) (Cobb and Shaw, JJ., concurring in the result). I continue to do so. I simply cannot agree that a defendant suffers no substantial prejudice from an illegal, mandatory sentence,[15] even when the sentence imposed does not exceed the statutory maximum. The harmless error approach adopted by the majority appears to me to conflict with the rationale of this Court's decisions in McClintock v. State, 773 So.2d 1057 (Ala. Crim.App.2000); Crenshaw v. State, 740 So.2d 478 (Ala.Crim.App.1998); and Pickens v. State, 475 So.2d 637 (Ala.Crim.App. 1985). Of particular significance, I think, is this Court's statement in Pickens:
"The State contends that since the appellant's life sentence was within the allowable range of punishment, his sentence *398 should stand. We cannot agree with this argument.
"The Alabama Supreme Court held in Ex parte Thomas, [435 So.2d 1324 (Ala. 1982)] [agreeing with Judge Bowen's dissent in Thomas v. State, 435 So.2d 1319 (Ala.Crim.App.1981)] that merely because a trial judge could have sentenced a defendant to a particular sentence does not necessarily mean that he would have imposed that particular sentence had he not considered improper matters."
435 So.2d at 640. (Emphasis in original.)
Furthermore, as a result of the position I take today, I do not agree with the remainder of the discussion in Part II of the Pearson opinion.
For the reasons state above, I agree with the majority that Poole's sentence must be reversed and that the case should be remanded for resentencing. Poole's indictment contained no reference to the sentence-enhancement factors set out in §§ 13A-12-250 and 13A-12-270; therefore, the indictment failed to charge the greater offense for which he was ultimately sentenced. Under well-established Alabama law, the trial court had no jurisdiction to impose the enhanced sentence. The sentence was, therefore, illegal.
I concur in the unpublished memorandum and I concur in the result in the Court's opinion.
COBB, Judge, concurring in the unpublished memorandum; concurring in part and dissenting in part from the opinion; and joining Judge Shaw's special writing, in part.
I write specially to concur, in part, in Judge Shaw's finely written special writing in this case, the first case in which our court has chosen to wrestle more fully with, and hopefully sort out, the dilemma created by the United States Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
The impact of Apprendi is difficult, if not impossible, to quantify. It essentially threatens thousands of criminal cases, and calls into question numerous existing state statutes. Because of the far-reaching impact of Apprendi, a careful analysis is required. Judge Shaw has performed this careful analysis in his special writing.
The majority opinion, in establishing a "minimalistic" approach to dealing with the thorny questions of the post-Apprendi era fails to come to terms with the entire Apprendi opinion, but instead, chooses to apply only its narrowest holding. Apprendi held that the Constitution requires that any fact that increases the penalty for a crime beyond the statutory maximum, other than the fact of prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. By emphasizing only a narrow view of the holding in Apprendi and by failing to use the analysis set forth in Judge Shaw's opinion, this Court joins the majority of state courts; however, by doing so it increases the challenge facing practitioners and trial judges throughout Alabama. This is one case in which it would be wiser to "grab the bull by the horns," and fully address the implications of Apprendi. This approach, I believe, would better serve the interests of judicial economy.
I am in total agreement with Judge Shaw's opinion until he states:
"I do agree with the majority that Sanders v. State, 815 So.2d 590 (Ala. Crim.App.2001), was correctly decided and that it is, therefore, due to be reaffirmed. In Sanders, this Court, applying the analysis set forth in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), held that the rule *399 announced in Apprendi does not apply retroactively to cases that were already final when Apprendi was decided.... In cases like Sanders, where the judgment was final before the Apprendi decision, relief under Rule 32, Ala.R.Crim.P., should not be available."
Poole v. State, 846 So.2d 370, 396-97 (Ala. Crim.App.2001)(Shaw, J., concurring in the result).
It is at this juncture we part ways. The application of the Teague principles lead us down two different paths. I recognize that Teague establishes an exceptionally high standard before a new rule of criminal procedure can be applied retroactively.[16] The United States Supreme Court has held that a new rule should be applied retroactively if it requires the observance of "those procedures that ... are `implicit in the concept of ordered liberty.'" Teague v. Lane, 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (citations omitted). I believe the Apprendi holding meets that test.
I recognize that many federal and state courts have interpreted Teague to prevent retroactive application of the rule in Apprendi. See Poole v. State, 846 So.2d at 376 (citing cases). However, I am convinced that the rights discussed in Apprendi are at the very core of the criminal justice system. Nothing is more basic than the requirement that a defendant be indicted and be afforded the opportunity for a trial by jury, with all its attendant rights, before being sentenced for a criminal offense. In our case, Poole was convicted of, and sentenced for, offenses for which he was not indicted and for which he obviously was not afforded the opportunity to have a "full hearing." Nothing could be further from the concept of "ordered liberty" referred to in Teague and its progeny. Apprendi presents a rare circumstance in that it fits into the second Teague exception, "which applies to those `watershed rules of criminal procedure' which `alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding' and `without which the likelihood of an accurate conviction is seriously diminished.' Sawyer v. Smith, 497 U.S. 227, 242-244, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990)(quoting Teague, 489 U.S. at 311, 315, 109 S.Ct. 1060, 103 L.Ed.2d 334)...." United States v. Murphy, 109 F.Supp.2d 1059, 1063 (D.Minn.2000).
The rationale for extending Apprendi to postconviction relief flows from one uncontroverted factAlabama statutes have made the basis for an enhanced sentence an element of the offense, but that element has not been charged in indictments. Labels are put aside by Apprendi, so the fact that the elements are charged as "sentencing factors" does not alter this result. Apprendi v. New Jersey, 530 U.S. 466, 476, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The Illinois court states my position well:
"We take Apprendi to mean that once the defendant serves the prescribed maximum sentence he or she remains in prison on a charge never made and never proved. And if we acknowledge the defendant remains in prison on a charge never made or proved, we have impugned the integrity of our criminal justice system. It is as if the sentencing judge actually said to the defendant: `I have convicted you of a charge never *400 made against you and never heard by a jury and I have done it based on the preponderance of the evidence.' Such a conviction, and its concomitant sentence, are repugnant to our notions of fundamental fairness."
Illinois v. Beachem, 317 Ill.App.3d 693, 702, 251 Ill.Dec. 308, 740 N.E.2d 389, 395 (2000)(emphasis added).
Because the case is before us on direct appeal, this may not be the appropriate time to address Sanders v. State, 815 So.2d 590 (2001), a case in which I regrettably concurred. Analysis of the implications of Apprendi on a postconviction case would obviously be more appropriate in a postconviction case, but because the majority discusses and reaffirms its holding in Sanders, I wanted to clarify my position on collateral review of Apprendi error.
The amount of judicial resources that will be expended in sorting through the cases complicated by and generated from Apprendi are impossible to quantify, yet I am in total agreement with the Appellate Court of Illinois when it stated:
"We understand the implications of extending Apprendi to collateral review. But we do what we believe the law requires. Our constitutional history teaches us we best survive when we hew to the line drawn by the rule of law. Because, under Teague, we conclude Apprendi implicates procedures implicit in the concept of ordered liberty, we find Apprendi applies to a timely-filed post-conviction petition."
People v. Beachem, 317 Ill.App.3d 693, 705, 251 Ill.Dec. 308, 316, 740 N.E.2d 389, 397 (2000).
I also disagree with the remedy imposed by the majority. The majority remands the case to the circuit court for that court to resentence Poole on his four convictions for distribution of a controlled substance. This approach is faulty because it implies that the trial court can "resentence" Poole on his distribution convictions, which are now to be considered lesser-included offenses of the "enhanced" offenses of distribution within three miles of a school and distribution within three miles of a public housing project. The law will not permit an increase in the base sentences in this circumstance. E.g., North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); McConico v. State, 539 So.2d 1085 (Ala.Crim.App.1988); Raines v. State, 562 So.2d 530 (Ala.Crim. App.1990).
The remedy in this case is very simple. The case should be remanded to the Circuit Court of Etowah County, and the judge should be ordered, with no hearing required, to revise the case action summary sheet by vacating all improper sentencing enhancements and by then notifying the Department of Corrections of this revision.
I believe that the foregoing analysis more fully acknowledges and accommodates the rules announced in Apprendi, and that, because this Court does not reach this result on its own, a higher court will be forced to impose it later.

On Return to Remand
PER CURIAM.
The appellant, Larry James Poole, Sr., was convicted of four counts of distributing controlled substances and one count of possessing a controlled substance. We affirmed Poole's conviction for possession and his sentence on that conviction, but we remanded the case for the trial court to resentence Poole on his trafficking convictions without application of the enhancements contained in § 13A-12-250 and § 13A-12-270, Ala.Code 1975. In doing so, we relied on the United States Supreme Court's decision in Apprendi v. *401 New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which held that any fact that increases a sentence above the statutory maximum must be presented to the jury and proven beyond a reasonable doubt. Poole v. State, 846 So.2d 370 (Ala.Crim.App.2001) (Shaw, J., concurring in the result, and Cobb, J., concurring in part and dissenting in part). The same day we issued the opinion in Poole, we affirmed his other convictions and sentences by an unpublished memorandum. Poole v. State, (No. CR-99-1200, August 31, 2001) 837 So.2d 885 (Ala.Crim.App. 2001) (table). In Poole's case, the facts that increased the sentences were not presented to the jury. Poole made a timely objection to this defect. Thus, we remanded the case for the trial court to resentence Poole. We stated the following in our opinion:
"[W]e hold that a fact that increases a sentence above the statutory maximum need not be alleged in the indictment. The State should, however, give notice of its intention to seek these enhancements. The fact that increases the sentence must be presented to the jury and proven beyond a reasonable doubt. The holding in Apprendi does not implicate jurisdiction; therefore, proper objections must be made before an appellate court will review an Apprendi issue."
Poole, 846 So.2d at 388.
The trial court has complied with our directions and has resentenced Poole without application of the enhancements in §§ 13A-12-250 and 13A-12-270. Poole's sentences are now due to be, and are hereby, affirmed.
AFFIRMED.
McMILLAN, P.J., and BASCHAB and WISE, JJ., concur.
SHAW, J., concurs in the result.
COBB, J., concurs in the result and dissents in part.
COBB, Judge, (concurring in the result and dissenting in part).
I adhere to my special writing in Poole v. State, 846 So.2d 370 (Ala.Crim.App. 2001).

On Application for Rehearing
PER CURIAM.
APPLICATION OVERRULED.
McMILLAN, P.J., and BASCHAB and WISE, JJ., concur.
COBB and SHAW, JJ., dissent.
SHAW, Judge, dissenting.
I continue to agree that Poole's convictions must stand. I also continue to agree with the result reached in this case. However, I would grant rehearing and hold that the sentence-enhancement factors set out in §§ 13A-12-250 and 13A-12-270, Ala.Code 1975, must be charged in an indictment, as I discussed in my special writing on original submission.
NOTES
[1] Poole does not challenge his sentence for the possession conviction. The sentence of imprisonment for this conviction was not increased by the application of any enhancement statute.
[2] "A recent study reveals that 32 States require that certain kinds of criminal prosecutions be initiated by indictment." Branzburg v. Hayes, 408 U.S. 665, 688 n. 25, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).
[3] The Court in Ex parte Winship, stated, "[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt...." 379 U.S. at 364, 85 S.Ct. 503.
[4] Alabama has traditionally held that an indictment is sufficient if it tracks the language of the applicable statute. Hartley v. State, 598 So.2d 2 (Ala.Crim.App.1991); Holder v. State, 584 So.2d 872 (Ala.Crim.App.1991); and Copeland v. State, 456 So.2d 1150 (Ala.Crim. App.1984).
[5] Justice O'Connor, in her dissenting opinion in Apprendi, touched on the dramatic effects of the decision when she noted:

"[T]he Court's decision threatens to unleash a flood of petitions by convicted defendants seeking to invalidate their sentences in whole or in part on the authority of the Court's decision today. Statistics compiled by the United States Sentencing Commission reveal that almost a half-million cases have been sentenced under the Sentencing Guidelines since 1989. See Memorandum from U.S. Sentencing Commission to Supreme Court Library, dated June 8, 2000 (total number of cases sentences under federal Sentencing Guidelines since 1989) (available in Clerk of Court's case file). Federal cases constitute only the tip of the iceberg. In 1998, for example, federal criminal prosecutions represented only about 0.4% of the total number of criminal prosecutions in federal and state courts. See National Center for State Courts, A National Perspective: Court Statistics Project (federal and state court filings, 1998)... (showing that in 1998, 57,691 criminal cases were filed in federal court compared to 14,623,330 in state courts). Because many States, like New Jersey, have determinate-sentencing schemes, the number of individual sentences drawn into question by the Court's decision could be collossal."
530 U.S. at 551, 120 S.Ct. 2348.
[6] We do not believe that the fact at issue herethe location of the criminal activityis the traditional type of fact that is presented to a grand jury for a finding of probable cause. The United States Supreme Court has characterized the function of a grand jury as follows:

"Historically, [the grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will."
Wood v. Georgia, 370 U.S. 375, 390, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962).
Whether a criminal act is committed within a designated distance of a school or a housing project is not a fact that is susceptible to differing opinion by reasonable persons. Unlike the fact in Apprendithe mens rea of the defendant at the time of the commission of the actthe location of a crime is not a matter upon which reasonable people can disagree.
[7] ABICLE periodically publishes Pattern Jury InstructionsCriminal to aid Alabama judges in composing their jury instructions.
[8] Unlike Judge Cobb, who writes specially in this case, we do not believe that the trial court can legally vacate the enhanced portions of the sentences and uphold the remainder of the sentences without a new sentencing hearing. Traditionally, when Alabama courts have invalidated an improperly applied enhancement, the courts have remanded the case to the trial court to conduct a new sentencing hearing. See Ex parte Bates, 709 So.2d 1115 (Ala.1997); Kain v. State, 700 So.2d 355 (Ala.Crim.App.1996); Nye v. State, 639 So.2d 1387 (Ala.Crim.App.1994). Here, the sentences for the distributing convictions were void; the trial court had no jurisdiction to enhance the sentences because the facts that form the basis of the enhancements were not presented to the jury and proven beyond a reasonable doubt. "`When the court imposes a sentence in excess of that authorized by statute, it exceeds its jurisdiction, and the sentence is void.'" King v. State, 677 So.2d 836, 838 (Ala.Crim.App.1996), quoting Ferguson v. State, 565 So.2d 1172, 1173 (Ala.Crim. App.1990). A void sentence has no legal effect and is the equivalent of never having been uttered.
[*] Note from the reporter of decisions: This case will also appear on a table of decisions without opinion.
[9] The Court stated the following at 530 U.S. 475-76, 120 S.Ct. 2348:

"The question whether Apprendi had a constitutional right to have a jury find such bias on the basis of proof beyond a reasonable doubt is starkly presented.
"Our answer to that question was fore-shadowed by our opinion in Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), construing a federal statute. We there noted that `under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior convictions) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' Id., at 243, n. 6, 119 S.Ct. 1215. The Fourteenth Amendment commands the same answer in this case involving a state statute."
(Emphasis added.)
Given the Court's statement, 530 U.S. at 477 n. 3, 120 S.Ct. 2348, that "Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment," I am unsure what weight this statement should be given. Note 3 could be interpreted as referring solely to the Fifth Amendment issue the Court did not address. Assuming that interpretation, this statement, although dictum, would appear to give some insight into whether the Court might hold that the failure to charge in an indictment the greater offense created by the imposition of sentence-enhancement factors, is a violation of the due-process guarantee of the Fourteenth Amendment. However, it is quite significant, I think, that Justice O'Connor, with whom the Chief Justice and Justices Kennedy and Breyer joined dissenting, stated:
"No member of this Court questions the proposition that a State must charge in the indictment and prove at trial beyond a reasonable doubt the actual elements of the offense. This case, however, concerns the distinct question of when a fact that bears on a defendant's punishment, but which the legislature has not classified as an element of the charged offense, must nevertheless be treated as an offense element."
530 U.S. at 527, 120 S.Ct. 2348.
[10] The majority focuses on the unchallenged proposition that the United States Supreme Court has not held that the grand jury and due-process rights guaranteed by the Fifth Amendment and the Fourteenth Amendment require a state to initiate a felony prosecution by indictment. Of course, that focus begs the question whether the Due Process Clause of the Fourteenth Amendment prohibits a state from ignoring its own well-established constitutional and statutory due-process requirements. In fact, one of the principle cases cited by the majority, Hurtado v. California, 110 U.S. 516, 535, 4 S.Ct. 111, 28 L.Ed. 232 (1884), specifically notes:

"In the fourteenth amendment, by parity of reason [comparing the Fourteenth Amendment to the Fifth Amendment], it refers to that law of the land in each state which derives its authority from the inherent and reserved powers of the state, exerted within the limits of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, and the greatest security for which resides in the right of the people to make their own laws, and alter them at their pleasure."
[11] It is puzzling to me how the majority can simultaneously hold that the geographical factors embodied in §§ 13A-12-250 and 13A-12-270 must be submitted to a jury for a factual finding, in accordance with the holding in Apprendi, and that "the location of a crime is not a matter upon which reasonable people can disagree." See n. 6 of the majority opinion.
[12] The majority, without apparent justification, effectively exempts a whole class of felony offenders from the due-process protections afforded to other felony offenders by the indictment process.
[13] I agree with the majority's discussion of the verdict forms. I also note that, in my opinion, the unlawful distribution of a controlled substance is a lesser included offense of unlawfully distributing a controlled substance within the geographical areas specified in §§ 13A-12-250 and 13A-12-270.
[14] I note that in note 8 of its opinion, the majority states that Poole's sentences "were void; the trial court had no jurisdiction to enhance the sentences because the facts that form the basis of the enhancements were not presented to the jury and proven beyond a reasonable doubt." That statement appears to be inconsistent with the majority's earlier statements: "Moreover, constitutional defects must be objected to in the trial court before we may review them on appeal.... Therefore, before this Court will review an alleged Apprendi violation, the defendant must object in the trial court." 846 So.2d at 381.
[15] The Pearson harmless error analysis was based on two casesUnited States v. Shepard, 235 F.3d 1295 (11th Cir.2000), and United States v. Gerrow, 232 F.3d 831 (11th Cir. 2000). However, neither Shepard nor Gerrow involved the kind of mandatory sentence enhancements required by §§ 13A-12-250 and 13A-12-270. In each of those cases the district court had sentenced under the wrong subsection of 21 U.S.C. § 841. (In each case the district court had sentenced under the subsection providing for a sentencing range based on drug quantity and drug type, when it should have sentenced under the subsection providing a different sentencing range where no drug quantities were specified in the indictment.) The Eleventh Circuit Court of Appeals found no reversible error because the district court in each case, having exercised its discretion under the particular circumstances presented, and based on the amount of drugs involved, had sentenced within the proscribed statutory range applicable to the offense for which the defendant was convicted.
[16] "Since Teague, no United States Supreme Court or Illinois Supreme Court case has found a new rule qualifies for retroactivity under the second Teague exception. But these decisions either do not involve fundamental rights or do not directly implicate accuracy. They are not `bedrock' pronouncements." Illinois v. Beachem, 317 Ill.App.3d 693, 702-03, 251 Ill.Dec. 308, 314, 740 N.E.2d 389, 395 (2000)(footnote omitted).